Nos. 2023-1850, -2038

# United States Court of Appeals
*for the*
# Fourth Circuit

HONEYWELL INTERNATIONAL INC., HAND HELD PRODUCTS, INC.,
METROLOGIC INSTRUMENTS, INC.,

*Plaintiffs-Appellants/Cross-Appellees,*

*v.*

OPTO ELECTRONICS CO., LTD.,

*Defendant-Appellee/Cross-Appellant.*

**On Appeal from the United States District Court
for the Western District of North Carolina
Case No. 3:21-cv-506-KDB-DCK**

**PLAINTIFFS-APPELLANTS' REDACTED OPENING BRIEF**

Kirk T. Bradley
M. Scott Stevens
S. Benjamin Pleune
Stephen R. Lareau
Nicholas C. Marais
Lauren N. Griffin
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street, Ste. 300
Charlotte, NC 28203
(704) 444-1000

*Attorneys for Plaintiffs-Appellants/Cross-Appellees
Honeywell International Inc., Hand-Held Products, Inc.,
and Metrologic Instruments, Inc.*

April 1, 2024

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-1850          Caption: Honeywell International, et al v. OPTO Electronics Co., Ltd.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Honeywell International Inc.
(name of party/amicus)

_____

who is _____ appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☑YES ☐NO

2.  Does party/amicus have any parent corporations?          ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?          ☐YES ☑NO
    If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: M. Scott Stevens          Date:      8/28/23

Counsel for: Appellants

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __23-1850__      Caption: __Honeywell International Inc. v OPTO Electronics Co., Ltd.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Hand Held Products, Inc.__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.   Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.   Does party/amicus have any parent corporations?   ☑YES ☐NO
     If yes, identify all parent corporations, including all generations of parent corporations:

     Honeywell International Inc.

3.   Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?   ☑YES ☐NO
     If yes, identify all such owners:

     Honeywell International Inc.

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?          ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)     ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?          ☐ YES ☑ NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?          ☐ YES ☑ NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ M. Scott Stevens          Date:          8/28/23

Counsel for: Appellants

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _23-1850_          Caption: _Honeywell International Inc., et al v. OPTO Electonics Co., Ltd._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Metrologic Instruments, Inc._
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☑YES ☐NO
       If yes, identify all parent corporations, including all generations of parent corporations:

       Honeywell International Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☑YES ☐NO
       If yes, identify all such owners:

       Honeywell International Inc.

4.     Is there any other publicly held corporation or other publicly held entity that has a direct
        financial interest in the outcome of the litigation?               ☐YES ☑NO
        If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)   ☐YES ☑NO
        If yes, identify any publicly held member whose stock or equity value could be affected
        substantially by the outcome of the proceeding or whose claims the trade association is
        pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?               ☐YES ☑NO
        If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
        party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
        caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
        corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?   ☐YES ☑NO
        If yes, the United States, absent good cause shown, must list (1) each organizational
        victim of the criminal activity and (2) if an organizational victim is a corporation, the
        parent corporation and any publicly held corporation that owns 10% or more of the stock
        of victim, to the extent that information can be obtained through due diligence.

Signature: M. Scott Stevens                              Date:          8/28/23

Counsel for: Appellants

Print to PDF for Filing

## TABLE OF CONTENTS

DISCLOSURE STATEMENT ......................................................................i

TABLE OF AUTHORITIES ...................................................................ix

JURISDICTIONAL STATEMENT .........................................................1

ISSUES PRESENTED...............................................................................3

STATEMENT OF THE CASE....................................................................5

I.   The Parties...........................................................................................5

II.  The Parties' Agreement.......................................................................6

III. OPTO Breached The Agreement. .......................................................8

IV.  Honeywell Pursued All Available Remedies For OPTO's Breach. ...............10

V.   The District Court Entered Partial Summary Judgment, *Sua Sponte*, For OPTO................................................................................12

VI.  Honeywell Prevailed At Trial. ..........................................................15

VII. The District Court Issued Post-Trial Rulings Upholding The Jury Verdict But Denying Honeywell Its Fees And Costs Under The Agreement. .............16

SUMMARY OF THE ARGUMENT .....................................................17

ARGUMENT ..........................................................................................22

I.   The Applicable Standards Of Review...............................................22

II.  The District Court Erred By Ruling On Summary Judgment That Both The Agreement And Honeywell's Allegations Of Breach Foreclose Honeywell's Pursuit Of All Available Remedies For OPTO's Breach...........23

    A.   The District Court Violated Applicable Contract-Interpretation Law by Limiting Honeywell's Available Remedies to the Audit Remedy in Section 5.1. ...........................................................24

B.   The District Court Incorrectly Concluded That Honeywell's Complaint Pleaded Limited Relief Rather Than All Available Remedies for OPTO's Breach of the Agreement. ....................................29

III.  The District Court Erred By Ruling On Summary Judgment That Honeywell Did Not Show Entitlement To Recovery Even Under The Agreement's Audit Provision. ............................................................33

A.   The District Court Ignored That OPTO Frustrated the Purpose of Honeywell's Audit, That Honeywell Substantially Complied With the Audit Provision, and That OPTO Waived or Acquiesced to Honeywell's Handling of the Audit. .......................................................37

B.   The District Court's *Sua Sponte* Ruling That Honeywell Did Not Comply With the Audit Provision Has Underlying Questions of Fact That Preclude Summary Judgment ..............................................44

IV.  The District Court Erred By Denying Honeywell Its Attorney Fees Under The Agreement, Which Expressly Awards "Fees and Costs." .......................47

A.   The District Court Erred by Requiring "Magic" Words to Enforce the Fee-Shifting Provision That the Parties Had Embraced and Implemented in the Agreement. .................................................48

B.   The District Court Erred by Concluding That the Agreement's Fee-Shifting Provision, Which Expressly Awards "Fees and Costs," Did Not Support Awarding Honeywell Its Fees and Costs ...........................50

C.   The District Court Erred by Concluding That the Fee-Shifting Provision Does Not Apply to Breach Actions. .......................................52

D.   The District Court Erred by Relying on Third-Party Agreements to Conclude That Honeywell Is Not Entitled to Its Fees and Costs. ............54

CONCLUSION .........................................................................................56

Certificate of Compliance with Type–Volume Limitation .....................................57

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3M Co. v. Neology, Inc.*,
   No. N18C-07-089, 2019 WL 2714832 (Del. Super. Ct. Jun. 28, 2019)............25

*A.I.C., Ltd. v. Mapco Petroleum*,
   711 F. Supp. 1230 (D. Del. 1989)........................................................................38

*Allstate Ins. Co. v. Fritz*,
   452 F.3d 316 (4th Cir. 2006) ..............................................................................22

*Amirsaleh v. Bd. of Trade of N.Y.*,
   27 A.3d 522 (Del. Aug. 16, 2011) ......................................................................42

*Aveta Inc. v. Bengoa*,
   No. 3598-VCL, 2010 WL 3221823 (Del. Ch. Aug. 13, 2010)...........................51

*Balt. Pile Driving & Marine Constr., Inc. v. Wu & Assocs.*,
   No. 19L-07-090, 2022 WL 3466066 (Del. Super. Ct. Aug. 18, 2022)
   ..............................................................................................................48, 49

*Boykin v. United States*,
   No. 5:21-cv-00103-KDB, 2023 WL 3467769 (W.D.N.C. May 15, 2023)
   ..............................................................................................................18, 30

*Cato Cap. LLC v. Hemispherx Biopharma Inc.*,
   625 Fed. App'x 108 (3d Cir. 2015) ....................................................................39

*Chase Manhattan Bank v. Iridium Afr. Corp.*,
   474 F. Supp. 2d 613 (D. Del. 2007)....................................................................37

*Comrie v. Enterasys Networks*,
   No. 19254, 2004 WL 936505 (Del. Ch. Apr. 27, 2004)..............................48, 55

*Estate of Buller v. Montague*,
   No. S18C-11-007 RFS, 2020 WL 996883 (Del. Super. Ct. Mar. 2, 2020)........42

*Estate of Osborn v. Kemp*,
   991 A.2d 1153 (Del. 2010) ..................................................................................49

*FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*,
    626 F.3d 752 (4th Cir. 2010) ...............................................................22

*Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond*,
    80 F.3d 895 (4th Cir. 1996) .........................................................30, 33

*Gildor v. Optical Sols., Inc.*,
    No. 1416-N, 2006 WL 4782348 (Del. Ch. Jun. 5, 2006) ............................39, 40

*Gotham Partners v. Hallwood Realty Partners*,
    817 A.2d 160 (Del. 2002) ............................................................23, 25

*Harper v. Del. Valley Broad., Inc.*,
    743 F. Supp. 1076 (D. Del. 1990).........................................................37

*JCM Innovation Corp. v. FL Acquisition Holdings*,
    No. N15C-10-255, 2016 WL 5793192 (Del. Super. Ct. Sept. 30, 2016)...........25

*Jehovah v. Clarke*,
    798 F.3d 169 (4th Cir. 2015) .............................................................36

*Knight v. Grinnage*,
    No. 14823, 1997 WL 633299 (Del. Ch. Oct. 7, 1997) .................................48, 55

*Kuhn Constr., Inc. v. Diamond State Port Corp.*,
    990 A.2d 393 (Del. 2010) .........................................................49, 50, 51

*L&W Ins., Inc. v. Harrington*,
    C.A. No. 2730-VCP, 2007 WL 1756540 (Del. Ch. June 6, 2007)....................48

*Leaf Invenergy Co. v. Invenergy Renewables LLC*,
    210 A.3d 688 (Del. 2019) ...............................................................26

*Millcreek Shopping Ctr., LLC v. Jenner Enters.*,
    No. N13C-11-145, 2017 Del. Super. Lexis 170 (Super. Ct. Mar. 31,
    2017) ...................................................................................53

*Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*,
    336 A.2d 211 (Del. 1975) ...............................................................25

*Rennolds v. Airport Advert. Inc.*,
    78 F. Supp. 585 (D. Del. Jul. 22, 1948)..................................................40

*Richardson v. Clarke*,
    52 F.4th 614 (4th Cir. 2022) ................................................................36

*Robinson v. Lorillard Corp.*,
    444 F.2d 791 (4th Cir. 1971) ..............................................................30

*S.H. Deliveries, Inc. v. TriState Courier & Carriage, Inc.*,
    No. 96C-02, 1997 WL 817883 (Del. Super. Ct. May 21, 1997) .......................28

*Seidensticker v. Gasparilla Inn, Inc.*,
    2007 WL 4054473 (Del. Ch. Nov. 8, 2007) .........................................52

*SIGA Techs., Inc. v. PharmaAthene, Inc.*,
    67 A.3d 330 (Del. 2013) ......................................................................48

*T.H.E. Ins. Co. v. Davis*,
    54 F.4th 805 (4th Cir. 2022) ...............................................................22

*U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*,
    873 F.2d 731 (4th Cir. 1989) ..............................................................22

*XRI Inv. Holdings, LLC v. Holifield*,
    283 A.3d 581 (Del. Ch. Sept. 13, 2022) ........................................42, 43

## RULES

Fed. R. Civ. P. 56(a) ....................................................................................22

Fed. R. Civ. P. 52(a)(1) ...............................................................................16

Fed. R. Civ. P. 54(c) ..............................................................................30, 33

Fed. R. Civ. P. 56(f) ....................................................................................35

Fed. R. Civ. P. 50(b) ...................................................................................16

Fed. R. Civ. P. 59 ........................................................................................16

## STATUTES

35 U.S.C. § 285 ...........................................................................................51

# JURISDICTIONAL STATEMENT

On April 20, 2023, the U.S. District Court for the Western District of North Carolina *sua sponte* granted partial summary judgment for OPTO on Honeywell's claim for breach of the representation and warranty of § 5.1 of an Agreement between Honeywell and OPTO. JA528. The parties tried Honeywell's remaining claim for breach of § 4.3 of the Agreement to a jury. The jury agreed with Honeywell and returned a verdict finding that OPTO had breached § 4.3 of the Agreement. JA781. The district court held a separate bench trial on OPTO's counterclaim for patent misuse and awarded judgment to Honeywell. JA1683–1684. The court entered final Judgment consistent with the jury verdict and decision in the bench trial on July 20, 2023 (JA783), and entered an Amended Judgment on July 26, 2023, awarding Honeywell damages of $859,741. JA787. On September 27, 2023, the court denied Honeywell's motion for fees and costs and OPTO's post-judgment motions. JA1813. Honeywell timely appealed to this Court on August 14, 2023 and October 2, 2023. JA1688; JA1814. Honeywell also timely appealed to the U.S. Court of Appeals for the Federal Circuit on October 27, 2023. JA1820.

Because OPTO's operative pleading included a compulsory counterclaim alleging patent unenforceability (JA3242–3244), and for the reasons set forth in Honeywell's motion to dismiss or transfer (Dkts. 32, 38), the Federal Circuit has exclusive jurisdiction over this appeal under 28 U.S.C. §1295(a)(1). Should the

Federal Circuit not have exclusive jurisdiction, then jurisdiction would be proper in this Court under 28 U.S.C. § 1294(1).

# ISSUES PRESENTED

1.      As a jury found, OPTO breached an Agreement with Honeywell that resolved an earlier legal dispute between them. In the underlying action, Honeywell sought to recover damages for OPTO's breach. Before trial, however, the district court ruled *sua sponte* on summary judgment that both the Agreement and Honeywell's pleadings foreclosed Honeywell's pursuit of ***all*** available remedies for OPTO's breach. First, the court ruled that the Agreement's optional audit procedure is the exclusive remedy available to Honeywell, despite that the Agreement contains no "expression of exclusivity" (as required by Delaware law) and despite that the Agreement says, "the parties shall have all remedies available to them under applicable law." JA6446. Second, the court ruled that Honeywell's Complaint sought relief only under the audit provision, despite allegations pleading broad entitlement to all available remedies to "recover damages resulting from Defendant's breach of the License and Settlement Agreement." JA57. Did the district court err by ruling *sua sponte* on summary judgment, with no opportunity for Honeywell to respond, that Honeywell is foreclosed from pursuing all available remedies for OPTO's breach of the Agreement?

2.      After (erroneously) ruling that Honeywell's exclusive remedy for OPTO's breach of the representation is the audit procedure, the district court ruled, *sua sponte* on summary judgment, that Honeywell had no right to any recovery under

the Agreement's audit provision. Because the court's ruling occurred *sua sponte* on summary judgment, with no opportunity for Honeywell to respond, the district court did not hear or consider the many genuine disputes of material fact that preclude summary judgment, including (1) that OPTO frustrated the purpose of the audit, (2) that Honeywell substantially complied with the audit procedure, and (3) that OPTO waived any challenge to Honeywell's conducting the audit. Did the district court err by ruling *sua sponte* on summary judgment that Honeywell is not entitled to recovery for OPTO's breach under the audit provision of the Agreement?

3.      Section 4.7 of the Agreement states: "In the event a Party must institute an action to collect any overdue payments, that Party shall be entitled to its fees and costs incurred with respect to such an action." JA6439. Honeywell prevailed on all issues addressed at the jury trial and bench trial and thus sought "its fees and costs incurred with respect to such [] action" under § 4.7. But the district court ruled that the Agreement does not permit any recovery of Honeywell's fees and costs. Did the district court err in concluding that the Agreement does not provide for fees and costs where the Agreement expressly states otherwise?

## STATEMENT OF THE CASE

Reversal is needed to correct a manifestly unjust result in which, despite a jury finding that OPTO breached an Agreement by underreporting its product sales to Honeywell, the district court *sua sponte* awarded OPTO summary judgment that Honeywell could have no remedy for OPTO's breach of its representation and warranty regarding past sales. And what's more, after Honeywell prevailed at trial on the remaining issues, the district court denied Honeywell any fees and costs despite that the Agreement expressly awards "fees and costs incurred" in an action to recover unpaid royalties.

## I.     The Parties.

Honeywell is a worldwide leader in the barcode scanning industry. Honeywell's patented technology has revolutionized the barcode scanning industry by providing increased scanning speed and efficiency. OPTO (sometimes referred to as OPTICON or Opticon) also manufactures and sells barcode scanning products.

In May 2019, Honeywell filed two patent infringement actions against OPTO—one in the Delaware district court and one in the U.S. International Trade Commission ("ITC") asking the Commission to prohibit importation of infringing OPTO products. JA2082; JA870.

On January 22, 2020, counsel and corporate representatives from each party mediated the dispute. The parties reached an agreement in principle and, during the

weeks that followed, negotiated the terms of the settlement. Ultimately, the parties executed the License and Settlement Agreement at issue in this appeal (the "Agreement"). JA6432–6446. The Agreement resulted from weeks of negotiation between two sophisticated parties, a world-renowned patent mediator, and law firms well versed in patent litigation.

## II.    The Parties' Agreement.

In the Agreement, OPTO agreed to pay Honeywell (1) $9 million over two installments for a past release and (2) an ongoing royalty of 7% of sales of 2D Barcode Products for a forward-looking license and covenant not to sue. JA6437–6438. OPTO confirmed that the $9 million for the past release was predicated on the amount of past sales—$102 million—that OPTO represented and warranted in § 5.1. JA6440–6441. OPTO's representation and warranty states:

> OPTICON further represents and warrants that OPTICON Gross Revenue of 2D Barcode Products in (i) the United States for the past six (6) years and (ii) Europe and Japan for the past five (5) years, totals not more than one hundred and two million U.S. Dollars ($102,000,000).

JA6440. Section 5.1 provides safeguards that allow Honeywell to verify OPTO's representation. The safeguards include: (1) OPTO providing Honeywell's outside counsel with the underlying sales records and (2) an optional audit that Honeywell could pursue. The Agreement recites:

> [(1)] OPTICON will provide sales reports to HONEYWELL'S outside counsel pursuant to the governing ITC Investigation Protective Order such that the above worldwide Opticon Gross Revenue can be verified.
>
> [(2)] HONEYWELL INTERNATIONAL, through an independent certified public accounting firm, shall have the right, at HONEYWELL INTERNATIONAL's expense, to audit OPTICON's records for the purpose of determining the accuracy of OPTICON's worldwide sales . . . Such audit may be conducted no more than one (1) time within one (1) calendar year of the Effective Date.

JA6440–6441. Section 5.1 also provides a liquidated-damages remedy if the audit showed that OPTO underreported its sales:

> Should an audit show OPTICON Gross Revenue of 2D Barcode Products in (i) the United States for the past six (6) years and (ii) Europe and Japan for the past five (5) years in excess of one hundred and seven million U.S. Dollars ($107,000,000), OPTICON shall (i) pay to HONEYWELL INTERNATIONAL 8.8% of the difference between the audited OPTICON Gross Revenue of 2D Barcode Products and $102,000,000 and (ii) reimburse HONEYWELL INTERNATIONAL for the reasonable cost of such audit.

JA6441. Because Honeywell did not have OPTO's sales information at the time, Honeywell insisted that OPTO make this representation and warranty and allow these safeguards so outside counsel and an auditor could verify the representation.

Section 4.3 of the Agreement sets forth the terms of OPTO's second payment obligation—an ongoing running royalty. JA6438. In exchange for a license to Honeywell's U.S. patent portfolio for OPTO's 2D Barcode Products and a covenant not to sue for OPTO's 1D Barcode Products, OPTO agreed to pay Honeywell a

royalty of 7% of its U.S. sales of 2D Barcode Products. JA6438. The Agreement

defined 2D Barcode Products as follows:

> **1.4 2D Barcode Products**. The term "2D Barcode Products" shall
> mean any device or article of manufacture that is operable to decode at
> least one or more two-dimensional barcode symbologies into human-
> readable text. Two-dimensional ("2D") barcode symbologies include,
> but are not limited to, any two-dimensional barcode symbology defined
> by one or more standards settings organizations such as the
> International Organization for Standardization (ISO), International
> Electrotechnical Commission (IEC), and the Association for Automatic
> Identification and Mobility (AIM). For the avoidance of doubt, the term
> "2D Barcode Products" shall include Engines and other products that
> include a 2D image sensor and are capable of outputting a 2D image
> that may be used to decode a 2D barcode symbology into human-
> readable text.

JA6434. Simply put, the provision defines 2D Barcode Product as including any

product operable to decode at least one two-dimensional barcode symbology.

The Agreement also provides certain provisions in the event the Agreement

is breached, including §§ 4.7 and 9.8. Section 4.7 provides that "[i]n the event a

Party must institute an action to collect any overdue payments, that Party shall be

entitled to its fees and costs incurred with respect to such an action." JA6439. And

§ 9.8 states that "the Parties shall have all remedies available to them under

applicable law." JA6446.

## III.  OPTO Breached The Agreement.

Over the next year, it became apparent to Honeywell that OPTO had

underreported its sales figures recited in the representation and warranty.

– 8 –

Foremost, OPTO failed to timely provide the required sales reports upon the Agreement's execution. Honeywell had to demand the report. In doing so, Honeywell also told OPTO it was "in the process of determining whether it will audit Opticon's records as contemplated by the [Agreement], and [that] gathering the sales reports is a necessary first step." JA4912. On September 16, 2020—nearly eight months tardy—OPTO finally provided just a subset of the required sales reports, which caused Honeywell concern that relevant products had been omitted. JA4915. Honeywell's counsel immediately asked about the completeness of the reports. JA4924–4926. But despite OPTO confirming that it would provide complete sales reports by the end of the next week (JA4918), OPTO never provided them.

On December 16, 2020, Honeywell sent OPTO a notice letter invoking the optional audit process. JA4928.[1] Despite the auditor asking OPTO for its sales data multiple times, OPTO did not begin providing that data to the auditor until nearly a month later, on January 15, 2021. OPTO ultimately did not provide complete sales information to the auditor until March 31, 2021 (more than three months after Honeywell had initiated the audit). JA4941; JA5189; JA5251–5252. Between January 15 and March 31, 2021, OPTO and the auditor exchanged nearly one hundred emails regarding the audit and OPTO's sales data.

---

[1] Given the state of the pandemic at the time in Japan, the audit was conducted remotely, not in person.

After the audit, Honeywell notified OPTO of the outcome. JA6934. The audit found that OPTO's gross revenue was more than ███████ *in excess* of the $102 million that OPTO had represented in § 5.1. JA6934. The audit also found that OPTO likewise had been underpaying the running royalties owed to Honeywell under § 4.3. JA6935. Honeywell requested that OPTO comply with the liquidated-damages provision and make the necessary payment to Honeywell. JA6934; JA7111. But OPTO refused.

## IV.   Honeywell Pursued All Available Remedies For OPTO's Breach.

On September 24, 2021, Honeywell brought the underlying action for breach of contract. JA51–63. Among other things, Honeywell sought relief for OPTO's breach of the § 5.1 representation and warranty regarding its past sales and for breach of § 4.3 due to OPTO's underpayment of its ongoing royalty obligations. JA56–57.

Honeywell's Complaint pleaded broad relief. For example, Honeywell pleaded that "Opticon breached its representation under Section 5.1" and that "Opticon has not paid, and continues to fail to pay, the full royalty delineated in Section 4 of the Agreement." JA56. Honeywell further pleaded that "Honeywell has been and continues to be damaged as a result of Opticon's breach" and that "Honeywell is entitled to recover damages resulting from Opticon's breach of the Agreement." JA56. In the Prayer for Relief, Honeywell requested standard breach

of contract damages such as "damages resulting from Defendant's breach of the [Agreement]." JA57.

During discovery, Honeywell learned that OPTO's underreported sales exceeded the amount uncovered by the audit, by another ██████████████ ████████ in underreported sales discovered through the audit). Thus, Honeywell averred that the extent of OPTO's breach and resulting damages to Honeywell were greater than just what the audit uncovered. JA4815–4819.

During discovery, Honeywell made clear that it sought two alternative forms of relief based on OPTO's breach of its past-sales representation: (1) the liquidated-damages remedy stemming from the audit set forth in § 5.1, and alternatively (2) damages for OPTO's breach independent of the audit remedy. For example, Honeywell's response to OPTO's contention Interrogatory No. 4 specifically identified both theories. JA4815–4819. And during expert discovery, Honeywell's damages expert similarly analyzed the damages owed to Honeywell both under the liquidated-damages provision and independently of the audit provision. JA4856–4860. At every stage of the case, from the initial Complaint through fact discovery and expert discovery, Honeywell communicated to OPTO that it sought (1) liquidated damages based on the audit and, alternatively, (2) damages for OPTO's breach independent of the audit remedy.

V.     **The District Court Entered Partial Summary Judgment, *Sua Sponte*, For OPTO.**

Honeywell and OPTO each submitted two competing summary judgment motions: one regarding interpretation of certain contractual provisions (JA125; JA131) and one regarding OPTO's counterclaim of patent misuse (JA4576; JA487).

It became clear that the parties disputed the definition of 2D Barcode Products. Honeywell interpreted the term as expressly defined in the Agreement, covering "any device or article of manufacture that is operable to decode at least one or more two-dimensional barcode symbologies into human-readable text," regardless of the underlying scanning hardware. JA125. OPTO, however, sought to limit the express definition to only products that both have an image sensor and are operable to decode two-dimensional barcode symbologies. *See, e.g.*, JA4270. The district court sided with Honeywell and found the definition of 2D Barcode Products to be unambiguous, meaning it was not limited to only products with an image sensor. JA522; JA545.

Honeywell also moved for summary judgment on whether the audit was a condition precedent to bringing suit. JA3967–3970. As part of OPTO's defenses, it alleged that Honeywell was required to conduct and complete an audit within one year of the Effective Date as a condition precedent to bringing suit. JA3222–3224. But OPTO did not cross-move on this issue or seek any ruling that Honeywell violated the provision.

At the summary judgment hearing, it appeared that the district court and Honeywell had a mutual understanding—the optional audit was not a condition precedent to Honeywell seeking relief untethered to liquidated damages. The court stated: "I'm fairly well persuaded that Honeywell had the right to sue Opticon for breach for that warranty for whatever reason." JA5464. The court then said:

> Isn't it entirely reasonable for Honeywell to be able to bring suit for breach of the representation and warranty in 5.1, but not be permitted the remedy provided in 5.1 because they didn't conduct the audit within the required year? Some other remedy for breach of warranty, sure. But not the one that's delineated in 5.1 itself. . . .

> Just reading 5.1, [Honeywell] can't take advantage of the remedy in 5.1 without conducting the audit within the one year as described in 5.1. But I don't think that that's the only way [Honeywell] had a right to sue for breach of rep and warranty.

JA5471–5472.

Despite the court's statements at the hearing, it reversed course and *sua sponte* granted summary judgment for OPTO on Honeywell's claim for breach of the representation and warranty. JA522; JA545. In doing so, the court held that to recover for OPTO's breach of the representation, Honeywell needed to conduct an audit and complete it within one year of the Agreement's effective date. JA523–524. The court also found—without having all the relevant facts from either party regarding the performance of the audit (as that question was not the subject of any summary judgment motion)—that Honeywell did not comply because it did not complete the audit within the one-year time frame. JA523–524.

– 13 –

Second, the district court found that "it would be inappropriate for the Court to allow" Honeywell to pursue a claim for breach of the representation and warranty "against OPTO completely untethered to the Agreement's audit remedy." JA526. The district court ruled that the audit remedy was the exclusive remedy for breach under § 5.1. JA526–527. And because Honeywell allegedly did not complete the audit within one year, the court ruled that Honeywell deserved *no* remedy for OPTO's § 5.1 breach. JA528. The court also ruled that Honeywell had not sought relief independent of the audit until the day of oral argument. JA525. The court based its ruling on a narrow construction of Honeywell's Complaint and without the benefit of the parties' discovery responses and Honeywell's expert report—again, because OPTO had never moved on that question.

Given the *sua sponte* nature of the Order, Honeywell moved for reconsideration and filed an Offer of Proof. JA546; JA4742. In the motion, Honeywell provided the relevant facts and applicable law. For example, Honeywell detailed the performance of the audit and highlighted that OPTO delayed providing its sales reports to Honeywell. JA4758–4760. Honeywell further identified where it pleaded broad relief in the Complaint and provided its discovery responses and expert report showing that it had consistently sought relief independent of the audit remedy. JA4749–4754. Honeywell also provided the relevant Delaware law requiring that, for a remedy to be an exclusive remedy under Delaware law, there

– 14 –

must be an explicit statement in the contract saying so. JA4754–4756. Due to the *sua sponte* nature of the court's findings, it did not have any of these facts or supporting law when it awarded summary judgment to OPTO.

The district court denied Honeywell's motion for reconsideration, declining to address the substance of any of the provided facts or law. JA565.

## VI.    Honeywell Prevailed At Trial.

The parties proceeded to a jury and bench trial on the remaining issues: Honeywell's claim for breach of OPTO's running royalty and OPTO's counterclaims of breach of the implied covenant of good faith and fair dealings and patent misuse.

At the jury trial, one of the key disputes was which OPTO products qualified as 2D Barcode Products (regardless of whether they were sold prior to or after the Agreement). OPTO sought to have certain products excluded because they decoded only ***certain*** two-dimensional symbologies and alternatively contended that "PDF417" was not a two-dimensional barcode symbology. Honeywell, however, presented evidence showing that PDF417 is a two-dimensional barcode symbology. Honeywell also showed that OPTO's own employees, marketing materials, and internal documents repeatedly classify PDF417-decoding products as decoding two-dimensional barcodes. The jury agreed with Honeywell that all the accused OPTO products, including PDF417-decoding products, were "2D Barcode Products" under

– 15 –

the Agreement. After receiving three days of evidence, the jury found for Honeywell on all claims and defenses. JA781.

The parties then proceeded to a bench trial on OPTO's counterclaim of patent misuse. After hearing both parties' evidence, Honeywell moved for judgment under Rule 52(a)(1). JA1681. The Court granted Honeywell's motion and stated its findings and conclusions on the record. JA1683–1684. Thus, Honeywell prevailed on all claims and defenses at both trials.

## VII.  The District Court Issued Post-Trial Rulings Upholding The Jury Verdict But Denying Honeywell Its Fees And Costs Under The Agreement.

After trial, Honeywell moved for its fees and costs under § 4.7 of the Agreement (JA788), and OPTO moved for relief under Rules 50(b) and 59 (JA1712). Honeywell's motion explained that the Agreement contains a fee-shifting provision: "In the event a Party must institute an action to collect any overdue payments, that Party shall be entitled to its fees and costs incurred with respect to such an action." JA6439; *see also* JA798–801. Honeywell was forced to incur significant fees and costs to collect the overdue royalty payments.

The district court denied the motions. JA1797. The parties timely appealed. JA1814; JA1817.

## SUMMARY OF THE ARGUMENT

Honeywell and OPTO reached a settlement agreement resolving Honeywell's claims of patent infringement. In that Agreement, OPTO represented and warranted that its past sales of relevant products were $102 million. But an audit later revealed that OPTO's sales actually exceeded ███████, prompting Honeywell to file this action for damages stemming from OPTO's breach of the Agreement. Discovery ultimately revealed that OPTO's sales were *even higher* than what the audit had uncovered, exceeding ███████. And at trial, a jury found that OPTO indeed breached the Agreement.

But before trial the district court ruled, *sua sponte* on summary judgment, that Honeywell was not entitled to *any* remedy for OPTO's breach based on its underreported past sales—whether based on the audit provision or on the actual quantum of harm uncovered during discovery. The district court did so *sua sponte*, without OPTO ever having sought summary judgment on the issue and without the district court ever providing notice to Honeywell that it was considering entering summary judgment on the issue. When Honeywell sought reconsideration (and made an Offer of Proof), the district court held fast, even while viewing its "entry of summary judgment as *sua sponte*" and declining to address Honeywell's evidence. JA567.

– 17 –

This Court should reverse the district court's summary judgment ruling for two key reasons.

First, the district court wrongly held that Honeywell could pursue no remedy for the full scale of OPTO's breach uncovered during discovery. Despite noting at oral argument that "I'm fairly well persuaded that Honeywell had the right to sue Opticon for breach for that warranty for whatever reason," the district court erroneously changed gears and held *sua sponte* that the Agreement's audit remedy was the sole and exclusive remedy—even if (as discovery showed) OPTO's breach exceeded what the audit uncovered. JA5464. But for a contractual remedy to be the sole and exclusive remedy, Delaware law requires an explicit "expression of exclusivity." There is no such expression in the Agreement. In fact, § 9.8 of the Agreement says the opposite: "the Parties shall have all remedies available to them under applicable law." JA6446.

Also, despite correctly holding just days later that a court has a "duty to grant whatever relief is appropriate in the case on the basis of the facts proved even if the party has not demanded that relief in its pleadings" (*Boykin v. United States*, No. 5:21-cv-00103-KDB, 2023 WL 3467769 at *5 (W.D.N.C. May 15, 2023)), the district court held here that Honeywell's pleadings somehow forfeited all available remedies except the audit remedy. The law does not support that stringent view.

– 18 –

The district court's view was also wrong on the facts. Honeywell's Complaint pleaded broad relief *in addition to* pleading specific relief under the Agreement's audit provision. Nothing in Honeywell's Complaint justifies the court's holding that Honeywell somehow waived or forfeited its available remedies. And again there was no basis for the district court to so conclude *sua sponte* on summary judgment, without any request by OPTO and without any notice to Honeywell. This Court should reverse the district court's holding and remand for a trial on damages owed by OPTO for its breach of the representation and warranty in the Agreement.

Second, the district court erroneously held in its *sua sponte* summary judgment order that Honeywell could not pursue *any* damages for OPTO's breach, even via the audit remedy. The court construed the Agreement's audit provision strictly and, on that basis, concluded that Honeywell failed to comply with the timing requirements, and that no jury could reasonably find otherwise. But no party moved for summary judgment regarding compliance or noncompliance with the timing of the audit, and the district court did not give Honeywell notice and an opportunity to respond before entering summary judgment *sua sponte*.

Had Honeywell received the opportunity to brief the issue, myriad facts show Honeywell's compliance or substantial compliance with all deadlines, thus precluding summary judgment. For example, the facts establish that (i) OPTO's own actions, including delaying its required production of relevant sales information for

use in the audit, frustrated the purpose of the audit; (ii) Honeywell substantially complied with the audit procedure's deadlines, including having collected all relevant materials by March 2021; and (iii) OPTO waived any challenge and acquiesced to Honeywell's handling of the audit by never voicing any objection at the time and by participating in the audit even after the alleged deadline had passed. Each of these issues presents a pure issue of fact to be decided by a jury. When Honeywell informed the district court of these facts by way of a motion for reconsideration and Offer of Proof, the district court refused to even consider the evidence. The court did not suggest a lack of genuine factual dispute when confronted with the actual evidence, nor could it have soundly done so. This Court should therefore reverse the district court's grant of summary judgment as to Honeywell's alleged lack of compliance with the audit's timeline.

Lastly, and separately, this Court should reverse the district court's denial of Honeywell's post-trial request for an award of fees and costs incurred, including attorneys' fees. Section 4.7 of the Agreement expressly awards "fees and costs incurred": "In the event a Party must institute an action to collect any overdue payments, that Party shall be entitled to its fees and costs incurred with respect to such an action." JA6439. The jury found that OPTO "breach[ed] the Parties' Settlement Agreement by failing to timely pay Honeywell all royalties due under the Agreement." JA781. Under the plain language of the Agreement, the jury's finding

of breach means Honeywell "shall be entitled to its fees and costs incurred." But the district court denied Honeywell its fees and costs.

The district court based its denial on the strained view that because the Agreement refers to "fees and costs" instead of "attorneys' fees and costs," the clause is not actually a fee-shifting provision. And the court defied Delaware law by additionally basing its holding on the Agreement's lack of a reference to a "prevailing party." Each of these rulings is wrong. Delaware law requires no magic language and instead instructs that fee-shifting provisions should be enforced as written. Because the district court eschewed Delaware law and incorrectly construed the Agreement, this Court should reverse and remand with instructions to award Honeywell its fees and costs, including attorneys' fees.

# ARGUMENT

## I.     The Applicable Standards Of Review.

This court reviews "an award of summary judgment de novo." *T.H.E. Ins. Co. v. Davis*, 54 F.4th 805, 818 (4th Cir. 2022). "Summary judgment is appropriate when—viewing the facts in the light most favorable to the nonmoving party—the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quotation marks omitted); *see also* Fed. R. Civ. P. 56(a). A grant of summary judgment *sua sponte*, as occurred here, is appropriate only "so long as the party against whom summary judgment is entered has notice 'sufficient to provide [it] with an *adequate opportunity* to demonstrate a genuine issue of material fact.'" *Allstate Ins. Co. v. Fritz*, 452 F.3d 316, 323 (4th Cir. 2006) (emphasis in original) (quoting *U.S. Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)).

This dispute also involves contract interpretation. This Court reviews "de novo a district court's decision on an issue of contract interpretation." *FindWhere Holdings, Inc. v. Sys. Env't Optimization, LLC*, 626 F.3d 752, 755 (4th Cir. 2010). The parties agree that Delaware law governs the Agreement.

## II.    The District Court Erred By Ruling On Summary Judgment That Both The Agreement And Honeywell's Allegations Of Breach Foreclose Honeywell's Pursuit Of All Available Remedies For OPTO's Breach.

The district court granted summary judgment, *sua sponte*, that Honeywell was foreclosed from pursuing all usual and expected breach-of-contract remedies for OPTO's breach of the Agreement. In so ruling, the district court erred in two ways. First, the court erred by interpreting the Agreement as providing an *exclusive* remedy—the remedy available under the audit and liquidated-damages provision in § 5.1. But in so ruling—*sua sponte* and on summary judgment, no less—the district court failed to analyze the strict standard for an "exclusive remedy."[2] Delaware law requires a clear "expression of exclusivity" in the agreement. *Gotham Partners v. Hallwood Realty Partners*, 817 A.2d 160, 176 (Del. 2002). No such expression of exclusivity is present anywhere in the Agreement between Honeywell and OPTO, and thus summary judgment was improper.

Second, the district court erred by ruling that Honeywell's pleadings had limited the requested relief solely to the audit remedy in § 5.1 rather than all available breach-of-contract remedies. The court ignored the plain language of Honeywell's pleadings, which broadly requested relief for OPTO's breach

---

[2] To be sure, the district court did not have the benefit of briefing on the applicable standards under Delaware law because it granted summary judgment *sua sponte*, without ever providing notice that it intended to grant such relief.

– 23 –

untethered to the Agreement's audit provision. Further, Honeywell's discovery responses and expert report confirmed the breadth of the requested remedies. The district court's errant conclusion—restricting Honeywell's damages to those available under the audit provision—was not only legally wrong but also makes no logical sense because discovery revealed that the magnitude of OPTO's breach far exceeded what the audit had uncovered. That is, although the audit—necessarily limited by the information OPTO chose to share with the auditor—revealed that OPTO had significantly underreported its sales of 2D Barcode Products in the Agreement, Honeywell learned during discovery that OPTO's misrepresentation was significantly larger. The district court's ruling precluded any recovery for Honeywell based on OPTO's expanded breach exposed by the discovery process.

This Court should reverse the award of partial summary judgment for OPTO and should remand with instructions that Honeywell may pursue all available breach-of-contract remedies associated with OPTO's breach of the Agreement.

## A. The District Court Violated Applicable Contract-Interpretation Law by Limiting Honeywell's Available Remedies to the Audit Remedy in Section 5.1.

OPTO never asked the district court to limit Honeywell's remedy to the audit remedy in § 5.1, and the district court never notified Honeywell that it intended to interpret the Agreement that way. Had OPTO raised such an argument, or had the district court alerted Honeywell of its plans, Honeywell would have briefed the issue.

– 24 –

Honeywell would have emphasized that Delaware law requires a clear "expression of exclusivity," and would have pointed out that the Agreement gives no hint—much less the required clear "expression of exclusivity"—that the remedies are limited.

But the district court provided no such notice. And the court interpreted the Agreement as providing only one *exclusive* remedy in the event OPTO breached its representation and warranty regarding past damages—the audit provision in § 5.1. JA526–527. The district court so ruled despite that, for a remedy to be an exclusive remedy under Delaware law, there must be language expressly stating so. The Supreme Court of Delaware has explained: "[E]ven if a contract specifies a remedy for a breach of contract, 'a contractual remedy cannot be read as exclusive of all other remedies [if] it lacks the requisite expression of exclusivity.'" *Gotham Partners*, 817 A.2d at 176 (quoting *Oliver B. Cannon & Son, Inc. v. Dorr-Oliver, Inc.*, 336 A.2d 211, 214 (Del. 1975)). Delaware courts consistently follow the Delaware Supreme Court's directive by requiring clear statements of exclusivity, such as a remedy provision using the words "sole and exclusive." *See, e.g.*, *3M Co. v. Neology, Inc.*, No. N18C-07-089, 2019 WL 2714832, at *2 (Del. Super. Ct. Jun. 28, 2019) (finding exclusive remedy under contract specifying "the sole and exclusive remedy"); *JCM Innovation Corp. v. FL Acquisition Holdings*, No. N15C-10-255, 2016 WL 5793192, at *6 (Del. Super. Ct. Sept. 30, 2016) (same).

There is no language in § 5.1 of the Agreement expressly stating—or even hinting—that the audit remedy is the exclusive remedy for a breach of a representation. Section 5.1 merely provides one available remedy where the optional audit is conducted and identifies a qualifying discrepancy: "should an audit show [gross revenues exceeding $107,000,000], OPTICON shall [pay Honeywell 8.8% of the difference and reimburse Honeywell for the audit]." JA6441. Nothing in the Agreement states that the audit remedy is the *exclusive* remedy.

Not only does the Agreement lack the required clear expression of exclusivity, it expressly confirms the opposite. Section 9.8 states that "the Parties shall have *all remedies* available to them under applicable law." JA6646 (emphasis added). Delaware courts have found that language like that in § 9.8 makes clear that remedies set forth in a contract are nonexclusive. *Leaf Invenergy Co. v. Invenergy Renewables LLC*, 210 A.3d 688, 704, n.54 (Del. 2019) (provision stating "[a]ll remedies hereunder are cumulative and are not exclusive of any other remedies provide by law" expressly provides that the remedies set forth in the contract are nonexclusive).

At the summary judgment hearing, the district court judge acknowledged that the audit remedy was not an exclusive remedy for a breach of § 5.1. The judge stated: "I'm fairly well persuaded that Honeywell had the right to sue Opticon for breach for that warranty for whatever reason, including an audit." JA5464. He also said:

> Isn't it entirely reasonable for Honeywell to be able to bring suit for breach of the representation and warranty in 5.1, but not be permitted

– 26 –

the remedy provided in 5.1 because they didn't conduct the audit within the required year? *Some other remedy for breach of warranty, sure.* But not the one that's delineated in 5.1 itself. . . .

Just reading 5.1, [Honeywell] can't take advantage of the remedy in 5.1 without conducting the audit within the one year as described in 5.1. *But I don't think that that's the only way they had a right to sue for beach of rep and warranty.*

JA5471–5472 (emphasis added). Despite recognizing that the audit remedy was not Honeywell's exclusive remedy, and despite the Agreement never limiting Honeywell's available remedies, the court's written ruling held the opposite: "the Agreement precludes a claim of breach related to the reporting of sales in Section 5.1 outside of the agreed detailed process for pursuing additional payments." JA526.

The district court did not base that holding on "clear statements of exclusivity"—none exist. Instead, the district court relied on the fact that Honeywell's damages theory sought 8.8% of the difference in actual versus represented OPTO gross revenue of 2D Barcode Products, which happens to match the percentage in the audit provision. JA525–527. That the royalty rate sought by Honeywell matched the royalty rate in the audit provision does not justify the district court's conclusion that the audit provision is an exclusive remedy. Rather, it supports the reasonableness of Honeywell's damages theory (i.e., that Honeywell's damages demand is based on the same royalty rate that the parties had agreed to in other sections of the Agreement).

– 27 –

To be sure, in exchange for a past release, OPTO agreed to pay $9 million for sales of not more than $102 million of 2D Barcode Products, which results in an implied royalty of 8.82% (which Honeywell rounded down to 8.8%). JA4851; *see also* JA4752. Even OPTO agreed that the basis of the $9 million payment was OPTO's $102 million gross revenue representation and warranty. *See* JA3222 ("OPTO's represented Gross Revenue was used to calculate the amount of the Initial and Second Payments OPTO made to Honeywell pursuant to Section 4.2 of the Agreement."). Thus, in calculating the damages Honeywell sought in the underlying litigation ***outside*** of the audit remedy, Honeywell intended to present an 8.8% royalty rate as the appropriate quantum of damages—not because of the audit's liquidated-damages formula, but because 8.8% formed the basis of the lump-sum payments when settling the underlying litigations. The jury would have been free to accept or reject that percentage as the correct quantum.

It should come as no surprise that the actual damages number and the liquidated-damages formula are similar. Under Delaware law, liquidated damages must be a "reasonable estimate of the damages which would probably be caused by the breach or is reasonably proportionate to the damages which have actually been caused by the breach." *S.H. Deliveries, Inc. v. TriState Courier & Carriage, Inc.*, No. 96C-02, 1997 WL 817883, at *2 (Del. Super. Ct. May 21, 1997). That the two calculations lead to almost the same amount is not an "end run around" the audit

provision as the district court ruled, but instead is evidence that Honeywell's actual damages calculation is reasonable. JA525–526. During the underlying litigation, OPTO was free to assert that a different amount was appropriate, but OPTO never challenged the appropriateness of Honeywell's remedy calculation and OPTO never presented an alternative calculation.

Accordingly, because the Agreement contains no clear "expression of exclusivity"—and explicitly states the opposite, that "the parties shall have all remedies available to them under applicable law"—the audit remedy set forth in § 5.1 cannot be and is not the exclusive remedy under Delaware law for OPTO's breach of its representation and warranty. The district court had it right during oral argument but erred as a matter of law in its written decision. The error warrants reversal of the summary judgment order and a remand for Honeywell to pursue its damages theory.

### B. The District Court Incorrectly Concluded That Honeywell's Complaint Pleaded Limited Relief Rather Than All Available Remedies for OPTO's Breach of the Agreement.

Since day one of this litigation, including during fact and expert discovery, Honeywell pleaded and sought relief for OPTO's breach under two separate theories: (1) based on § 5.1's liquidated-damages provision relating to the audit process, and alternatively, (2) based on general breach remedies, uncoupled from the Agreement's optional audit provision. Had the district court provided notice to

Honeywell that it intended to grant summary judgment on this issue, Honeywell would have informed the district court of the relevant facts and law.

Under controlling law, pleadings are interpreted liberally, especially with respect to damages. The judge recognized this principle when, just days later, he issued an opinion applying this Court's holding that courts have a "'duty to grant whatever relief is appropriate in the case on the basis of the facts proved' even if the party has not demanded that relief in its pleadings, and '[t]he pleadings serve only as a rough guide to the nature of the case.'" *Boykin*, 2023 WL 3467769 at *5 (quoting *Robinson v. Lorillard Corp.*, 444 F.2d 791, 803 (4th Cir. 1971)). Moreover, this Court has explained that "Rule 54(c) . . . commands that the trial court shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." *Id*. (quoting *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond*, 80 F.3d 895, 901 (4th Cir. 1996)). Here, Honeywell's Complaint did not artificially limit the remedies sought, but instead pleaded broad entitlement to all available remedies to "recover damages resulting from Defendant's breach of the License and Settlement Agreement." JA57.

In the Complaint, Honeywell broadly pleaded that OPTO had breached the representation and warranty of § 5.1, stating in paragraph 33 of the Complaint that "Opticon breached its representation under Section 5.1 of the Agreement." JA56. And Honeywell sought relief for OPTO's breach not only under the liquidated-

damages provision of Section 5.1 (in paragraph 34 of the Complaint) but also more

broadly (in paragraphs 38 and 39 and in the Prayer for Relief):

> 38. Honeywell has been and continues to be damaged as a result of Opticon's breach.
>
> 39. Honeywell is entitled to recover damages resulting from Opticon's breach of the Agreement.
>
> * * *
>
> WHEREFORE, Honeywell prays for the entry of a judgment from this Court in its favor and against Opticon and respectfully requests the following relief:
>
> a) That Honeywell recover damages resulting from Defendant's breach of the License and Settlement Agreement.

JA56–57. The Complaint never forfeited damages beyond just those allowed under

the audit provision.

Honeywell kept this same tune during discovery. Honeywell expressly

confirmed that it was seeking relief not limited to the liquidated-damages provision.

For example, Honeywell's response to OPTO's contention interrogatories, timely

served during the fact discovery period, provided:

> **[OPTO'S] INTERROGATORY NO. 4**
> State your contention regarding whether any party to the Action is entitled to any damages or relief in this Action, setting forth all facts upon which You base Your contention and identifying all Documents and other evidence that support Your contention.
>
> **[HONEYWELL'S] RESPONSE TO INTERROGATORY NO. 4**
> . . . .
> Under § 5.1 of the Settlement Agreement, Honeywell is entitled to damages for OPTO's breach of its representation and warranty of the

– 31 –

amount of OPTICON Gross Revenue of 2D Barcode Products sold prior to the Effective Date.

… .

***First, . . . Based on the audit***, Honeywell understands that over the relevant time period, OPTO received revenues of at least . . . for the sale of these 2D Barcode Products . . . . This amounts to a total revenue of ▮▮▮▮▮▮▮▮ in *excess* of the $102,000,000 that OPTO represented was the Gross Revenue for its 2D Barcode Products during the relevant timeframe. ***Honeywell is entitled to 8.8% of the difference between the audited Gross Revenue of 2D Barcode Products and $102,000,000 and reimbursement for the reasonable cost of the audit.***

. . .

***Second, OPTO breached its representation and warranty <u>independently</u> of the audit.*** This is material breach of a material representation and warranty. OPTO represented and warranted that the gross revenue of its 2D Barcode Products in the 6 years preceding the Effective Date in the United States and the 5 years preceding the Effective Date for Japan and Europe was not more than $102,000,000. But through sales records produced in this litigation, sales of such products are materially higher . . . . Based on preliminary calculations, that equates to sales of 2D Barcode Products during the relevant time period of over ▮▮▮▮▮▮▮▮▮▮ above the representation and warranty. OPTO therefore owes Honeywell 8.8% of that difference, or more than ▮▮▮ . . . .

JA4815–4817 (emphasis added). Through at least the Complaint and Honeywell's discovery responses, OPTO had long been on notice that Honeywell sought broad relief for OPTO's breach.

The parties conducted full discovery on both allegations. Discovery revealed that the actual damages were far greater than the audit had revealed. The audit was limited to certain products and identified only ▮▮▮▮ in underreported sales. JA4816–4817. But during discovery, OPTO produced all of its sales, which revealed sales of 2D Barcode Products *more than* ▮▮▮▮ *in excess* of the $102 million

representation. JA4817. It would be both illogical and manifestly unjust to allow OPTO to misrepresent its gross revenue to Honeywell and have no consequence for the additional sales uncovered only in discovery outside of and after the audit process. No aspect of the Agreement or any legal precedent precludes Honeywell from pursuing relief for the full extent of OPTO's breach of its representation and warranty. *See Gilbane*, 80 F.3d at 901 ("Rule 54(c) . . . commands that the trial court shall grant the relief to which the party in whose favor it is rendered is entitled"). But that is what the district court ruled here.

The court erred as a matter of law by holding that the Complaint was limited to the liquidated-damages remedy. That decision should be reversed and the case remanded for trial of Honeywell's damages claim.

## III. The District Court Erred By Ruling On Summary Judgment That Honeywell Did Not Show Entitlement To Recovery Even Under The Agreement's Audit Provision.

As discussed in the previous section, the district court erred by foreclosing Honeywell from pursuing all available remedies for OPTO's breach of the Agreement. The court wrongly limited Honeywell's recovery to that provided by the Agreement's audit provision in § 5.1. But when the district court analyzed Honeywell's recovery under the audit provision, the district court again erred by

– 33 –

awarding OPTO summary judgment, *sua sponte*, that Honeywell had failed to meet the timelines in the audit provision. [3]

The effect of the district court's rulings—wrongly limiting Honeywell's available remedies to only the Agreement's audit remedy (*see* section II, *supra*) and then concluding that Honeywell is not even entitled to the audit remedy (as discussed in this section)—is that Honeywell received no remedy at all for OPTO's breach of its representation and warranty concerning its past sales. But the jury has already decided that a breach occurred, and discovery showed that OPTO significantly misrepresented its past sales. The district court erred by not allowing Honeywell to recover any remedy at all—not even the audit remedy—for OPTO's breach. The district court's rulings allowed OPTO to avoid any consequence for its transgressions. That is wrong as a matter of law, not to mention fundamental fairness. The district court's ruling, made *sua sponte* and at the summary judgment stage, should be reversed.

As described below, there are myriad facts in dispute that the district court sidestepped when it ruled on summary judgment. Honeywell sought to correct the

---

[3] This Court should reverse and remand if it agrees with Honeywell as to either argument—meaning the arguments presented in Sections II *or* III. But to be clear, only the relief requested in Section II affords Honeywell a remedy for the full extent of OPTO's breach. The remedy in Section III does not account for the additional $30-plus million in underreported sales identified only in discovery and not during the audit.

court's errors through a motion for reconsideration and Offer of Proof, but the court refused even to consider the evidence. Thus, in the end, the district court's failure to provide notice to Honeywell of its intent to *sua sponte* grant summary judgment regarding the factual question of whether Honeywell complied (completely or at least substantially) with the audit provision constitutes an independent error that warrants reversal. Had the district court provided Honeywell with the requisite notice, Honeywell would have raised significant questions of fact for the jury to decide, including (1) that OPTO frustrated the purpose of the audit, (2) that Honeywell substantially complied with the audit procedure, and (3) that OPTO waived any challenge and acquiesced to Honeywell's handling of the audit—each of which is a question of fact.

Under Rule 56(f), a district court must give a party (here Honeywell) "notice and a reasonable time to respond" before granting summary judgment "for a nonmovant," granting the motion "on grounds not raised by a party," or considering summary judgment "on its own after identifying for the parties material facts that may not be genuinely in dispute." None of those things happened here. OPTO never moved for summary judgment on whether Honeywell failed to comply with the audit schedule, nor on any related issue such as whether OPTO's own actions frustrated

Honeywell's ability to comply with that schedule.[4] If OPTO had moved for summary judgment on the issue, Honeywell would have identified key facts showing that summary judgment was not warranted, including those identified by Honeywell in its Offer of Proof (which includes the three issues enumerated above, each of which is explained below). *See* JA4742–4768.

The district court acknowledged that its summary judgment ruling occurred *sua sponte*. *See* JA567 (explaining that the court would consider its "entry of summary judgment as *sua sponte*"). But when Honeywell raised the court's error in a motion for reconsideration and Offer of Proof, the court refused to even account for Honeywell's evidence. Together the court's rulings deprived Honeywell of any relief for OPTO's breach, even the audit remedy in § 5.1.

This Court frequently overturns *sua sponte* grants of summary judgment where a party is "not afforded the requisite opportunity to demonstrate an issue of material fact regarding the [granted ground]." *Jehovah v. Clarke*, 798 F.3d 169, 177 (4th Cir. 2015); *see also, e.g.*, *Richardson v. Clarke*, 52 F.4th 614, 623–24 (4th Cir. 2022). Here, the district court's *sua sponte* grant of summary judgment stripped

---

[4] Honeywell, *and only Honeywell*, moved for an "order granting partial summary judgment that the License and Settlement Agreement does not require an independent audit as a condition precedent for filing a breach-of-contract action." JA126. Honeywell's motion did not address compliance with the audit provision's schedule (for there was no need to do so), and OPTO made no such motion itself.

Honeywell of its opportunity to demonstrate the genuine disputes of material fact showing entitlement to recovery under the audit provision in § 5.1 of the Agreement. Reversal is warranted.

> **A.     The District Court Ignored That OPTO Frustrated the Purpose of Honeywell's Audit, That Honeywell Substantially Complied With the Audit Provision, and That OPTO Waived or Acquiesced to Honeywell's Handling of the Audit.**

The district court's *sua sponte* ruling ignored three key issues, each of which is addressed below, and each of which involves genuine disputes of material fact that preclude summary judgment.

***OPTO Frustrated the Purpose of Honeywell's Audit by Delaying Providing the Requisite Materials.*** The district court's *sua sponte* summary judgment ruling stripped Honeywell of its ability to present its frustration-of-purpose argument, which involves a pure question of fact. *Harper v. Del. Valley Broad., Inc.*, 743 F. Supp. 1076, 1090 (D. Del. 1990). There are numerous genuine disputes of material fact as to that question, precluding summary judgment.

Under Delaware law, "[t]he frustration of purpose defense requires the [party] to establish: (1) substantial frustration of the principal purpose of the contract; (2) that the nonoccurrence or occurrence of the frustrating event was a basic assumption upon which the contract was made; and (3) no fault on the part of the [party raising the defense]." *Chase Manhattan Bank v. Iridium Afr. Corp.*,

474 F. Supp. 2d 613, 620 (D. Del. 2007). Had Honeywell been given the opportunity, it would have demonstrated that all three of these requirements are satisfied, or at minimum that there are questions of fact for resolution by the jury.[5]

As to whether there was substantial frustration of the principal purpose of the contract, § 5.1 of the Agreement provides Honeywell the right to audit OPTO concerning a matter underlying the core purpose of the Agreement. Honeywell's right to an audit obligated OPTO not to frustrate that right. But OPTO failed to timely provide the auditor with the requisite materials, frustrating the principal purpose of § 5.1, which was to confirm OPTO's sales representations.

As to the second requirement, Honeywell entered the Agreement on the basic assumption that OPTO would timely provide the required sales reports (to Honeywell's outside counsel) and the required audit materials (to the auditor). Under

---

[5] Were the audit provision viewed as a condition precedent to Honeywell's breach claim—a finding not explicitly stated in the district court's summary judgment order—the "prevention doctrine" leads to the same result. Under Delaware law, "[t]he 'prevention doctrine' provides that a party may not escape contractual liability by reliance upon the failure of a condition precedent where the party wrongfully prevented performance of that condition precedent." *A.I.C., Ltd. v. Mapco Petroleum*, 711 F. Supp. 1230, 1238 (D. Del. 1989). The doctrine ensures that "[o]ne who unjustly prevents the performance or the happening of a condition" is not "permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was pr[e]mised." *Id.* (alteration in original). Here, OPTO's conduct prevented Honeywell from completing the audit before January 21, 2021.

the Agreement, Honeywell needed to provide only "reasonable prior notice" to invoke the audit process. JA6440–6441.

Finally, as to the third requirement, the frustration of purpose that occurred was OPTO's fault, not Honeywell's. OPTO had the required information readily available yet did not provide it until the end of March 2021. JA5189. Had the district court indicated it might *sua sponte* rule that Honeywell failed to comply with § 5.1, Honeywell would have emphasized these facts showing OPTO's frustration of this core part of the Agreement. OPTO's actions track the fundamental reason for the frustration-of-purpose claim—to prevent parties from thwarting their contractual obligations and ultimately benefiting from their own inappropriate behavior. Honeywell should have been entitled to present these facts to a jury.

***Honeywell Substantially Complied With the Audit Provision's Timing Requirements.*** Honeywell was also entitled to demonstrate its substantial compliance with the audit provision, but the district court's *sua sponte* ruling prevented that. Importantly, whether Honeywell "can satisfy the doctrine of substantial compliance is a question of fact." *Cato Cap. LLC v. Hemispherx Biopharma Inc.*, 625 Fed. App'x 108, 111 (3d Cir. 2015).

Substantial compliance or performance is "that which, despite deviations from contract requirements, provides the important and essential benefits of the contract." *Gildor v. Optical Sols., Inc.*, No. 1416-N, 2006 WL 4782348, at *7 (Del. Ch. Jun. 5,

2006). In a case similar to this one in the pertinent respects, the parties' contract required certain advertising display space to be sold within a time frame specified in the agreement, but the space was not sold within the required time frame. The Delaware court rejected the defendant's argument that the failure to sell the display space within the time frame voided the contract. The court ruled that the "contract covering this item was accepted by defendant and the time element is so inconsequential that there was at least substantial compliance with the terms of the agreement." *Rennolds v. Airport Advert. Inc.*, 78 F. Supp. 585, 587 (D. Del. Jul. 22, 1948). The same applies here. The mere fact that the audit process continued shortly beyond the one-year time frame (even though the delays were attributable to OPTO) is so inconsequential to the material terms that a jury could reasonably find that Honeywell substantially complied with § 5.1.

In its summary judgment order, the district court theorized that if the completion of the audit was not limited to one year, the audit "could go on for years without any limitation." JA524. That concern is easily allayed by the rationale underlying the substantial-compliance doctrine. The court in *Gildor* explained that the "requirement of substantial compliance is an attempt to avoid harsh results . . . where the purpose of [the contractual requirements] has been met." 2006 WL 4782348, at *7 (internal quotation marks omitted).  Here, though the audit extended beyond the one-year mark for a couple months (due to OPTO's delays),

– 40 –

Honeywell substantially complied in all material respects. Applying the "substantial compliance" doctrine would be a fair outcome and would avoid the harsh result the doctrine is designed to avoid. Honeywell should have been allowed to present the associated facts, and the jury should have been the arbiter of those facts. OPTO never sought summary judgment on this issue, and thus the district court did not have the benefit of Honeywell's position during the summary judgment process.

Honeywell's position is reinforced by the facts underlying the delay, including an unforeseeable global pandemic and OPTO's own delay in providing the materials it was obligated to provide. As explained above, Honeywell started the audit process well before the one-year date. It was only because of OPTO's delay that the auditor did not receive the pertinent sales spreadsheets during the one-year period. That OPTO kept providing information after the one-year period had lapsed (and signed an NDA related to the audit material it was sharing that extended beyond the one-year period) supports Honeywell's substantial compliance with § 5.1 of the Agreement. Honeywell was therefore entitled to have a jury hear its defense of substantial compliance, at least because OPTO's own actions should not be allowed to undercut material portions of the contract to Honeywell's detriment.

***OPTO Waived Any Right to Enforce the Timing Requirements in the Audit Provision and Acquiesced to Honeywell's Handling of the Audit.*** OPTO was a willing participant in dealing with the auditor in February and March 2021, the short

timeframe beyond the one-year mark. OPTO's own conduct thus demonstrates a waiver of or acquiescence to the timeline. This, too, is a pure question of fact. *Estate of Buller v. Montague*, No. S18C-11-007 RFS, 2020 WL 996883, at *6 (Del. Super. Ct. Mar. 2, 2020) (whether the party's failure to "complain even though the insurance was not obtained by the specified date and carried on business as usual" constituted acquiescence was a question of fact "not appropriate for summary judgment"); *see Amirsaleh v. Bd. of Trade of N.Y.*, 27 A.3d 522, 530 (Del. Aug. 16, 2011) (finding waiver of contractual deadline).

"It is well settled in Delaware that a party may waive contractual requirements or conditions." *Amirsaleh*, 27 A.3d at 529. "[T]hree elements must be demonstrated to invoke the waiver doctrine: (1) that there is a requirement or condition capable of being waived, (2) that the waiving party knows of that requirement or condition, and (3) that the waiving party intends to waive that requirement or condition." *Id.* Once a party waives the requirement or condition, "[a] party typically is prohibited from retracting its waiver if the non-waiving party has suffered prejudice or has relied to his detriment on the waiver." *Id.* In a similar vein, the doctrine of "acquiescence effectively works as an estoppel," barring later claims of noncompliance when a party "having 'full knowledge of his rights and the material facts,' engages in conduct that leads the other party to believe reasonably that the act had been approved." *XRI Inv. Holdings, LLC v. Holifield*, 283 A.3d 581, 623 (Del. Ch. Sept.

13, 2022). "A party may convey the message of approval by (i) remaining inactive for a considerable period of time, (ii) freely acknowledging or taking action that amounts to recognition of the challenged act, or (iii) acting in a manner inconsistent with a repudiation of the act." *Id.* Acquiescence "turns on the objective manifestations" of the party's conduct. *Id.*

Whether viewed through the lens of waiver or the lens of acquiescence, OPTO's conduct fits the bill. OPTO was aware of the terms of the Agreement, knew that Honeywell had invoked its audit rights, actively provided requested information to the auditor both before and after January 21, 2021, and never objected that the audit was untimely. And in its own internal analysis, OPTO believed it was "probable" that Honeywell's claim was correct, never suggesting that the timing of the audit precluded relief. JA553.

The Agreement uses the phrase "conducted" twice in § 5.1—once in reference to the audit taking place during "normal business hours," and once in reference to the timing of the audit. JA6440–6441. Taking the district court's ruling to its natural extension, Honeywell would also be barred from bringing a claim for breach of contract if, for example, OPTO had allowed the auditor to remain at its premises for even a few minutes outside of normal business hours for the mutual convenience of all involved. This would be an absurd result, but under the district court's rationale the consequence would be a summary judgment ruling barring all relief. The district

court applied that very approach when considering the time frame for the audit. OPTO (and its lawyers) had every opportunity to object to the audit after January 21, 2021, but OPTO instead continued to provide more data to the auditor through March 31, 2021. OPTO's conduct thus amounted to acquiescence.

OPTO should not be allowed to unfairly prejudice Honeywell by retroactively enforcing a deadline that it was aware of and chose not to enforce. Moreover, OPTO's own acquiescence—by continuing to send documents past January 21, 2021—demonstrates the lack of any prejudice to OPTO. Indeed, OPTO continued to participate in the audit after the one-year mark without raising a single objection. OPTO cannot belatedly assert prejudice from any delay (which was of its own doing) when the audit was complete and nothing more was required of it. For this additional reason, there are a myriad of triable issues of fact regarding compliance that should have precluded summary judgment regarding the timing of the audit.

**B.    The District Court's *Sua Sponte* Ruling That Honeywell Did Not Comply With the Audit Provision Has Underlying Questions of Fact That Preclude Summary Judgment.**

Honeywell properly complied with the audit provisions contemplated by § 5.1. As explained, § 5.1 of the Agreement provides Honeywell the *right* to audit OPTO. JA6440–6441. Nowhere does it *require* that Honeywell proceed with an audit to seek remedy for breach. With respect to the provisions governing the audit, Honeywell complied with each of the requirements. The Agreement recites:

> HONEYWELL INTERNATIONAL, through an independent public accounting firm, shall have the right, at HONEYWELL INTERNATIONAL's expense, to audit OPTICON's records for the purpose of determining the accuracy of OPTICON's worldwide sales; provided that HONEYWELL INTERNATIONAL provides OPTICON with reasonable prior notice, and such audit is conducted during OPTICON's normal business hours. Such audit may be conducted no more than one (1) time within one (1) calendar year of the Effective Date.

JA6440–6441.

Once Honeywell initiated the audit, OPTO never contested whether it had reasonable prior notice of the audit and never contested whether the audit was conducted during OPTO's normal business hours. Had OPTO raised any such challenge, Honeywell would have addressed them. At minimum the pertinent circumstances involve questions of fact for a jury.

Honeywell conducted the audit only one time within one year of the Effective Date. Honeywell provided notice that it was invoking its right to audit OPTO on December 16, 2020, over one-month before the deadline of January 22, 2021. The district court's *sua sponte* ruling that Honeywell's audit was not *finished* within one year of the effective date misinterprets the Agreement. The district court determined that the language "conducted . . . within one (1) calendar year of the Effective Date" requires that the audit be fully completed before the Effective Date. JA524. The court reasoned that because the contract also uses the term "conducted" as it relates to

conducting the audit during OPTO's business hours, the parties contemplated that the audit must be completed within a precise, limited timeframe. JA524.

The district court's interpretation does not fit the rest of the requirements of the Agreement. It makes little sense that Honeywell could provide reasonable notice of the audit, but then fail to meet a related provision simply because OPTO dragged its feet in complying with its audit obligations. Indeed, OPTO did not provide the last of the necessary sales records until March 31, 2021. The district court's interpretation puts Honeywell at the mercy of OPTO, who could delay the audit for as long as it wanted, thus circumventing the audit provision. That interpretation results in an illogical conclusion.

Either way, a jury should decide whether Honeywell met its obligation to conduct the audit within the one-year period, not the district court *sua sponte* at the summary judgment stage. Honeywell hired and ultimately handed off control of the audit to a third-party auditor who was working directly with OPTO well before the audit deadline, and thus Honeywell met its obligations under the audit provision. It is a question of fact as to whether Honeywell's actions amounted to *conducting* the audit within one year. Accordingly, at the very least, a dispute of material fact existed that should have gone to a jury for consideration.

This Court should therefore reverse the summary judgment order and remand for trial on whether Honeywell complied with the audit provisions and is entitled to liquidated damages.

## IV.  The District Court Erred By Denying Honeywell Its Attorney Fees Under The Agreement, Which Expressly Awards "Fees and Costs."

When the parties negotiated the Agreement, they specifically included a fee-shifting provision: "In the event a Party must institute an action to collect any overdue payments, that Party shall be entitled to its fees and costs incurred with respect to such an action." JA6439. Under Delaware law, courts are to enforce fee-shifting provisions as written. Here, Honeywell was forced to incur significant fees and costs to collect the overdue royalty payments that the jury found OPTO failed to make, and Honeywell had to defend the multitude of (ultimately failed) affirmative defenses and counterclaims that OPTO lodged.

The court erred as a matter of law by misapplying controlling Delaware law regarding fee-shifting provisions. As discussed below, the court erred by requiring "magic" words and, on that basis, also erred in each of its three reasons for denying Honeywell any fees and costs whatsoever. This Court should reverse the district court's denial of Honeywell's motion.

### A. The District Court Erred by Requiring "Magic" Words to Enforce the Fee-Shifting Provision That the Parties Had Embraced and Implemented in the Agreement.

The Agreement establishes a valid and enforceable fee-shifting provision under Delaware law. When a contract provides for attorneys' fees, Delaware courts look solely to the contract in determining whether to grant such an award. *Comrie v. Enterasys Networks*, No. 19254, 2004 WL 936505, at *2 (Del. Ch. Apr. 27, 2004).

"Where a contract places the responsibility for payment of attorneys' fees on any party who either breaches the contract or fails to perform in accordance with the terms of the contract, courts will enforce the bargained-for provision absent evidence of an ambiguity or contrary intent." *L&W Ins., Inc. v. Harrington*, C.A. No. 2730-VCP, 2007 WL 1756540, at *3 (Del. Ch. June 6, 2007) (internal quotation marks omitted). As a result, "Delaware law and equity courts routinely enforce provisions of a contract allocating costs of legal actions arising from the breach of a contract." *Knight v. Grinnage*, No. 14823, 1997 WL 633299, at *3 (Del. Ch. Oct. 7, 1997); *see also SIGA Techs., Inc. v. PharmaAthene, Inc.*, 67 A.3d 330, 352 (Del. 2013) ("In contract litigation, where the contract contains a fee-shifting provision, we will enforce that provision.").

"Under Delaware law, there is no 'bright-line language' to establish a fee shifting provision." *Balt. Pile Driving & Marine Constr., Inc. v. Wu & Assocs.*, No. 19L-07-090, 2022 WL 3466066, at *2 (Del. Super. Ct. Aug. 18, 2022). Delaware

law treats each provision as "unique," and each "must be decided under the facts of that particular case." *Id*. Delaware courts must also "give each provision and term effect, so as not to render any part of the contract mere surplusage." *Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 396–97 (Del. 2010).

Despite Delaware law being clear that there are no "magic words" or "magic phrases" needed for a fee-shifting provision, the district court ruled otherwise. The court concluded that because the provision lacks the terms "attorney" and "prevailing party," § 4.7 could not be a fee-shifting provision. JA1806–1813. That ruling directly contradicts the no-magic-words-required precedent in Delaware.

Section 4.7 states: "In the event a Party must institute an action to collect any overdue payments, that Party shall be entitled to its fees and costs incurred with respect to such an action." JA6439. Here, Honeywell instituted the underlying action to collect overdue royalty payments due under § 4.3 and § 5.1. JA56. An objective and reasonable third party would understand that, because Honeywell instituted an action to collect overdue royalty payments, Honeywell is "entitled to its fees and costs incurred with respect to such an action." *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("Delaware adheres to the 'objective' theory of contracts, i.e., a contract's construction should be that which would be understood by an objective, reasonable third party.").

As a result, the district court erred by not concluding that § 4.7 is a valid and enforceable fee-shifting provision under Delaware law.

**B. The District Court Erred by Concluding That the Agreement's Fee-Shifting Provision, Which Expressly Awards "Fees and Costs," Did Not Support Awarding Honeywell Its Fees and Costs.**

Based on the straightforward words of § 4.7, Honeywell is entitled to all "fees and costs" incurred in recovering OPTO's overdue payments, which includes attorneys' fees. The district court concluded, however, that because § 4.7 lacks the word "attorneys," the reference to "fees" does not include "attorneys' fees," and Honeywell was entitled to none of its fees or costs whatsoever. JA1808–1813. That conclusion defies explicit Delaware precedent requiring interpreting a contractual provision to give each provision effect. *See Kuhn Constr.*, 990 A.2d at 396–97.

The Agreement is clear and unambiguous that "fees and costs" includes all fees and costs incurred in the action, including attorneys' fees, expert fees and costs, and other fees and costs incurred. An objective and reasonable third party would understand "fees" not to be limited to any one type of fee, but rather to include any fee incurred, including attorneys' fees and expert fees. This understanding is confirmed by, for example, Black's Law Dictionary, which defines "fee" as "a charge or payment for labor or services, esp. professional services." *See* FEE, BLACK'S LAW DICTIONARY (11th ed. 2019). Black's Law Dictionary goes on to provide examples of "fees" and specifically includes "attorney's fees" and

"expert-witness fee[s]" within the definition. *Id.* This customary understanding of "fees" has been applied by Delaware courts. For example, in *Aveta Inc. v. Bengoa*, the plaintiff moved to enforce a "fee award," and the court enforced the fee award by repeatedly referring to "fees" and a "fee award" as including attorneys' fees. No. 3598-VCL, 2010 WL 3221823 (Del. Ch. Aug. 13, 2010). To exclude attorneys' fees from the award of "fees" in the Agreement—as the district court did here—would render the recitation of "fees" superfluous and mere surplusage. Such a reading cannot stand under Delaware law. *Kuhn Constr.*, 990 A.2d at 396-97 ("[Delaware courts] will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage.").

The context of the Agreement also supports awarding Honeywell its fees and costs. In the "Background" of the Agreement, the parties explained that in the preceding Delaware action, Honeywell "sought a declaration of infringement, damages, interest, attorney fees, and accounting of damages, costs of suit, and equitable relief." JA6433. That language reflected Honeywell's Request for Relief in the Delaware action, which sought (among other things) "a determination that this is an exceptional case, and an award to Honeywell of its reasonable attorneys' fees pursuant to 35 U.S.C. § 285." JA901. Based on that language, the parties agreed in § 3.2 that "[e]ach Party shall bear its own . . . attorneys' fees" in resolving the Delaware and ITC actions. JA6437. But the parties expressly used the *broader* term

"fees" in Section 4.7—capturing attorneys' fees *and* other fees incurred with respect to an action to collect overdue payments. *See Seidensticker v. Gasparilla Inn, Inc.*, 2007 WL 4054473, at * (Del. Ch. Nov. 8, 2007) ("When interpreting contracts, this Court gives meaning to every word in the agreement and avoids interpretations that would result in 'superfluous verbiage.'"). There is no grammatical, contractual, or other support for the notion that "fees" somehow excludes "attorneys' fees."

Under the ordinary understanding of the Agreement, Honeywell is entitled to its fees and costs—including attorneys' fees, expert fees, and any other fees and costs incurred in the underlying litigation.

### C. The District Court Erred by Concluding That the Fee-Shifting Provision Does Not Apply to Breach Actions.

Section 4.7 contemplates the precise action that Honeywell brought—an action to collect overdue payments from OPTO. Ignoring the plain language of § 4.7, the court concluded that § 4.7 "may not even apply to 'court' actions" and suggested that § 4.7 instead applies only to collection actions. JA1798, JA1812–1813. That conclusion fails under the plain wording of the Agreement, and it departs from the actual jury verdict.

First, there is a close congruency between the language of the Agreement and the jury's findings. The fee-shifting provision applies to "an action to collect any overdue payments," and the jury explicitly found that "OPTO breach[ed] the [] Agreement by failing to timely pay Honeywell all royalties due under the

– 52 –

Agreement." JA6439; JA781. The jury's finding of breach falls squarely within the ambit of the fee-shifting provision.

Second, Honeywell and OPTO are not, and have never been, in a debtor/creditor relationship, so there would be no point in the Agreement having a collections provision applicable to such a relationship. For there to be a debtor/creditor relationship, Honeywell would have had to lend money to OPTO. *See Millcreek Shopping Ctr., LLC v. Jenner Enters.*, No. N13C-11-145, 2017 Del. Super. Lexis 170, at *11 (Super. Ct. Mar. 31, 2017) (finding that there must be an underlying loan obligation for the formation of a debtor-creditor relationship under Delaware debtor-creditor law). Honeywell never loaned money to OPTO, so it is nonsensical to limit § 4.7 to only collection actions.

Third, § 4 of the Agreement—titled "Payments and Other Consideration"—is not limited to "collection actions." JA6437–6440. Section 4 and its subsections articulate OPTO's various payment obligations: § 4.2 recites OPTO's lump-sum payment to Honeywell; § 4.3 recites OPTO's ongoing royalty payments; § 4.5 requires OPTO to submit reports in connection with its royalty obligations; and § 4.6 articulates a late fee if OPTO is late in making its payments. JA6437–6440. And then § 4.7 articulates what happens if OPTO fails to make any payment. JA6439.

The jury returned a verdict implicating damages under both §§ 4.3 and 4.6. Both Honeywell and OPTO stipulated "that the computation of the royalties under

§ 4.3 and the late fees under § 4.6 of the License and Settlement Agreement directed to the accused products in this matter is $859,741." JA784.[6] It is inconsistent for the parties to stipulate to damages under § 4 but at the same time ignore § 4.7. A plain reading confirms that § 4.7 is implicated when a party institutes *any action* for overdue payments under § 4.

Therefore, the district court erred in concluding that § 4.7 does not apply to a breach-of-contract action to collect overdue payments.

### D. The District Court Erred by Relying on Third-Party Agreements to Conclude That Honeywell Is Not Entitled to Its Fees and Costs.

The district court further erred by improperly relying on Honeywell agreements with third parties Datalogic and Zebra in concluding that § 4.7 does not award fees and costs. JA1810–1811.

Datalogic and Zebra are not parties to this litigation. Nor were they subject to any third-party discovery in the case. Datalogic and Zebra are other competitors that have licensed Honeywell's barcode scanning portfolio on completely different terms. In short, the Datalogic and Zebra licenses have no connection to the Agreement between Honeywell and OPTO.

---

[6] The similarities in the language of §§ 4.6 and 4.7 are noteworthy: § 4.6 recites "[i]n the event a Party fails to make any payment due hereunder," and § 4.7 recites "[i]n the event a Party must institute an action to collect any overdue payments." JA6439.

Despite the irrelevance of these other agreements, the district court relied on them when interpreting the Agreement between Honeywell and OPTO. The court concluded that because Honeywell had used "prevailing party" and "attorneys' fees" language in the agreements with Datalogic and Zebra, and because the Agreement with OPTO does not use those same words, Honeywell necessarily did not include a fee-shifting provision in the OPTO Agreement. JA1811–1812.

The district court's ruling counters Delaware law, which mandates that Delaware courts look "solely" to the document in determining whether to grant such an award. *Comrie*, 2004 WL 936505, at *2. Delaware law further assumes that "[t]he parties who enter[ed] into a contract [had] the opportunity during the course of their negotiations to add to the contract any provision appropriately bargained for which would place the responsibility for payment of attorneys' fees on any part who either breaches the contract or fails to perform in accordance with the terms of the contract." *Knight*, 1997 WL 633299, at *3. The district court erred by relying on evidence beyond the four corners of the Agreement to conclude that § 4.7 is not a fee-shifting provision.

For each of these independent reasons, this Court should reverse the district court's denial of Honeywell's motion for fees and costs.

## CONCLUSION

For the foregoing reasons, this Court should reverse the district court's award of summary judgment and remand for Honeywell to pursue all available remedies for OPTO's breach of the Agreement and to recover its fees and costs.

Dated: April 1, 2024

/s/ Kirk T. Bradley
Kirk T. Bradley
ALSTON & BIRD LLP
Vantage South End
1120 S. Tryon Street, Suite 300
Charlotte, NC 28280-4000
Email: kirk.bradley@alston.com
Telephone: 704-444-1030
Facsimile: 704-444-1730

*Attorneys for Plaintiffs-Appellants/Cross-Appellees Honeywell International Inc., Hand-Held Products, Inc., and Metrologic Instruments, Inc.*

– 56 –

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23-1850, -2(    **Caption:** Honeywell International Inc, et al. v. OPTO Electronics C

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains ___12847___ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
Size 14 Times New Roman _____ [*identify font size and type style*]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font size and type style*].

(s) /s/ Kirk T. Bradley _____

Party Name Honeywell International Inc., et al _____

Dated: 04/01/2024 _____

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 1st day of April, 2024, I caused the Plaintiffs-Appellants' Sealed Opening Brief, Plaintiffs-Appellants' Redacted Opening Brief and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

York M. Faulkner
YORKMOODYFAULKNER
711
Tensho Building, 7F
3-17-11 Shibaura
Tokyo, Minato-Ku, 108-0023
Japan
(202) 251-0837
york.faulkner@ymf-law.com

Brian D. Schmalzbach
MCGUIREWOODS, LLP
800 East Canal Street
Richmond, Virginia 23219
(804) 775-4746
bschmalzbach@mcguirewoods.com

*Counsel for Appellee*

I further certify that on this 1st day of April, 2024, I caused copies of the Sealed Brief and Sealed Volumes of the Joint Appendix to be served, via email, upon counsel for the Appellee, with written consent.

/s/ Kirk T. Bradley
*Counsel for Appellants*