**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 23-1850**

———————————

HONEYWELL INTERNATIONAL INC.; HAND HELD PRODUCTS, INC.; METROLOGIC INSTRUMENTS, INC.,

        Plaintiffs – Appellants,

    v.

OPTO ELECTRONICS CO., LTD.,

        Defendant – Appellee.

———————————

**No. 23-2038**

———————————

HONEYWELL INTERNATIONAL, INC.; HAND HELD PRODUCTS, INCORPORATED; METROLOGIC INSTRUMENTS, INC.,

        Plaintiffs – Appellees,

    v.

OPTO ELECTRONICS CO., LTD.,

        Defendant – Appellant.

———————————

Appeals from the United States District Court for the Western District of North Carolina, at Charlotte.  Kenneth D. Bell, District Judge.  (3:21-cv-00506-KDB-DCK)

———————————

Argued:  October 30, 2024                Decided:  April 29, 2025

———————————

Before GREGORY, RICHARDSON, and BENJAMIN, Circuit Judges

———————————

Dismissed by published opinion. Judge Richardson wrote the opinion, in which Judge Gregory and Judge Benjamin joined.

———————————

**ARGUED:** Matthew Scott Stevens, ALSTON & BIRD LLP, Charlotte, North Carolina, for Appellants/Cross-Appellees. Brian David Schmalzbach, MCGUIREWOODS, LLP, Richmond, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** Kirk T. Bradley, S. Benjamin Pleune, Stephen R. Lareau, Nicholas C. Marais, Lauren N. Griffin, ALSTON & BIRD LLP, Charlotte, North Carolina, for Appellants/Cross-Appellees. York M. Faulkner, YORKMOODYFAULKNER, Tokyo, Japan, for Appellee/Cross-Appellant.

RICHARDSON, Circuit Judge:

Honeywell International and OPTO Electronics come before us on cross-appeal of a dispute over a patent-licensing agreement. Each party challenges the district court's decision below. But we cannot reach the merits because the United States Court of Appeals for the Federal Circuit possesses exclusive appellate jurisdiction over this appeal. We instead dismiss the appeal so that the parallel appeal pending in the Federal Circuit may proceed.

## I.    BACKGROUND

Honeywell International, a Delaware corporation, and OPTO Electronics, a Japanese company, are competitors in the market for barcode-scanning equipment and technology. In May 2019, Honeywell sued OPTO for patent infringement in both the United States International Trade Commission and the United States District Court for the District of Delaware, alleging that the barcode products OPTO imported into the United States infringed seven patents held by Honeywell. In January 2020, the two parties reached a truce by settling all pending patent-infringement litigation through a patent-licensing agreement. The 2020 licensing agreement provided OPTO with licenses on Honeywell's entire U.S. patent portfolio in exchange for royalty payments on OPTO's revenues for "2D Barcode Products."

Honeywell did not have to take OPTO's word on their "2D Barcode Products" revenue. The agreement permitted Honeywell to audit OPTO's books to confirm that OPTO's revenue representations were accurate and to impose fines for unreported revenues. Trouble unfolded after Honeywell concluded its audit in March 2021 and

3

claimed that OPTO had undersold its revenues by several million dollars. The gap arose from a disagreement between Honeywell and OPTO on the definition of "2D Barcode Products": Honeywell asserted that some laser-scanning barcode readers OPTO had classified as "1D barcode products" were actually "2D Barcode Products." OPTO disagreed.

Unable to resolve the scope of "2D barcode products," Honeywell sued OPTO for breach of contract in the Western District of North Carolina on September 24, 2021. Honeywell alleged that OPTO had failed to pay the full amount of royalties owed on both its past gross revenues and its ongoing gross revenues of "2D Barcode Products." OPTO denied the allegations and asserted various defenses to Honeywell's breach-of-contract claim.

Crucially for this case, OPTO also filed several counterclaims, one of which was a declaratory judgment action asserting that Honeywell's conduct amounted to patent misuse. OPTO claimed that Honeywell's attempt to collect royalties on OPTO's laser-scanning barcode readers "results in unreasonable restraint on competition by unlawfully extending the reach of [Honeywell's] licensed patents . . . thereby limiting OPTO's ability to compete in an alternative market for 1D barcode readers" and "raising the price for consumers generally in that market." OPTO's Answers/Counterclaims (D. Ct. Dkt. ECF No. 17) at 30. In both the body of its counterclaim complaint and in its ultimate prayer for relief, OPTO sought as relief a declaration that Honeywell's licensed patents were unenforceable because of that misuse. OPTO sought other relief too, including a second declaration that the agreement's royalty-payment provisions were unenforceable due to

patent misuse, as well as a refund of all prior payments made to Honeywell under the licensing agreement.

The number of claims and counterclaims below resulted in splintered litigation, the details of which are unnecessary to recount. At the end, a jury found that OPTO's laser-scanning barcode readers counted as "2D barcode products" but only awarded $859,741 to Honeywell. The district court subsequently conducted a bench trial and rejected OPTO's counterclaim, concluding that Honeywell had not engaged in patent misuse as a matter of law. The district court then denied post-trial motions from both sides, rejecting Honeywell's claim to attorney's fees and OPTO's motion to set aside the jury verdict.

Honeywell filed a notice of appeal to this Court, and OPTO timely cross-appealed, each side seeking to overturn its losses while defending its wins below. But shortly afterward, Honeywell decided that the United States Court of Appeals for the Federal Circuit had exclusive appellate jurisdiction, not us. Honeywell thus filed a second notice of appeal, this time to the Federal Circuit; OPTO timely cross-appealed there too. Honeywell also moved to dismiss the first notice of appeal in this Court. OPTO opposed the motion in this Court while filing a mirror-image motion to dismiss in the Federal Circuit. In short, Honeywell seeks to litigate this appeal in the Federal Circuit, while OPTO seeks to keep the appeal here.

Because we received the appeal first, the Federal Circuit placed their parallel appeal in abeyance pending our resolution of the jurisdictional question. We now answer that question.

## II.    DISCUSSION

The judicial power of the federal courts of appeals extends only so far as Congress ordains.  U.S. Const., art. III, § 1.  "Congress may determine a lower federal court's subject matter jurisdiction," and in doing so it can choose to place jurisdiction over particular matters in particular courts.  *Kontrick v. Ryan*, 540 U.S. 443, 452-53 (2004).  Because "[w]ithout jurisdiction the court cannot proceed at all," we must assess whether we have subject matter jurisdiction before we consider the merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)).  We determine that we do not; only the Federal Circuit does.  So we must dismiss this appeal.

### A.    The Federal Circuit Has Exclusive Jurisdiction Over Appeals Containing Patent Claims and Counterclaims.

Congress created the United States Court of Appeals for the Federal Circuit in 1982 "to reduce the widespread lack of uniformity and uncertainty of legal doctrine that exist[ed] in the administration of patent law."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 813 (1988) (quoting H.R. Rep. No. 97-312, at 23 (1981)).  The Federal Circuit was given "exclusive jurisdiction" over appeals from federal district courts where the district court's jurisdiction "was based, in whole or in part, on section 1338."  Federal Courts Improvement Act of 1982, Pub. L. No. 97-164, § 1295, 96 Stat. 25, 37.  Section 1338, in turn, gave district courts original jurisdiction over "any civil action arising under any Act of Congress relating to patents" and stripped state courts of the ability to hear the same.  28

U.S.C. § 1338(a).  Taken together, the newly created Federal Circuit was the only court able to hear appeals of civil actions "arising under" the federal patent laws.

But Congress failed in its first attempt to make the Federal Circuit the singular decider of patent appeals.  In *Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, the Supreme Court held that a civil action does not "arise under" federal patent law when the patent issue first appears in the defendant's counterclaim.  535 U.S. 826, 830 (2002). As worded, the Federal Circuit's jurisdictional statute tracked the language of 28 U.S.C. § 1331, the federal question jurisdiction statute.  And the phrase "arising under" in the latter was interpreted in *Louisville & Nashville Railroad Co. v. Mottley* to limit federal-question jurisdiction to cases where federal law is properly presented in the "plaintiff's original cause of action," rather than coming up as a defense.  211 U.S. 149, 152–53 (1908).  By analogy, then, the Federal Circuit's jurisdiction did not cover patent law claims that appeared outside "the face of the *plaintiff's*" "well-pleaded complaint," *Holmes Grp.*, 535 U.S. at 830–31, creating the possibility that the Federal Circuit and the regional circuits would split in their adjudications of the same patent issue.  *Holmes Group* thus highlighted a hole in the Federal Circuit's exclusive appellate jurisdiction that threatened the uniformity of patent law.

Congress patched the *Holmes Group* hole in 2011 by expressly expanding the Federal Circuit's jurisdiction to cases where the patent law issue first appears in a party's compulsory counterclaim.  *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, § 19, 125 Stat. 284, 331-32 (2011); *see also Vermont v. MPHJ Tech. Invs., LLC*, 803 F.3d 634, 644 (Fed. Cir. 2015) (noting that the 2011 amendments "are commonly referred to as

the '*Holmes Group* fix'").  The Federal Circuit now has exclusive appellate jurisdiction over all "appeal[s] from a final decision of a district court of the United States . . . in any civil action arising under, *or in any civil action in which a party has asserted a compulsory counterclaim arising under*, any Act of Congress relating to patents."  28 U.S.C. § 1295(a)(1) (emphasis added).  That is, the Federal Circuit's exclusive appellate jurisdiction no longer depends on which party first brings the patent law claim.

The amended text of § 1295(a)(1) vests exclusive appellate jurisdiction in the Federal Circuit when a counterclaim is filed and two conditions obtain:  (1) the counterclaim is "compulsory";  and (2) the counterclaim is one "arising under[] any Act of Congress relating to patents."  Here, OPTO, the defendant below, asserted a counterclaim seeking a declaration that Honeywell's licensed patents were unenforceable due to patent misuse.  Because that counterclaim is both compulsory and arises under the patent laws, § 1295(a)(1) mandates that the Federal Circuit hear this appeal.

## B.    OPTO's Patent-Misuse Counterclaim is Compulsory.

Section 1295(a)(1) first requires that a defendant's counterclaim be "compulsory" to be relevant for Federal Circuit jurisdiction.[1]  The term "compulsory counterclaim" is not defined in § 1295.  But we understand Congress to have incorporated the term's "well-established legal meaning[]"—and the "cluster of ideas [ ] attached to" it—from Rule 13(a)

---

[1] The parties appear to agree that OPTO's counterclaim is compulsory.  This does not absolve us of the need to conduct our own analysis, however, as parties cannot bind the courts by stipulating to questions of law.  *See, e.g.*, *Young v. United States*, 315 U.S. 257, 258-59 (1942); *see also* 22A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. Evid. § 5194.1 (2d ed.) ("[P]arties cannot use stipulations to alter the law.").

of the Federal Rules of Civil Procedure. *United States v. Hansen*, 599 U.S. 762, 774 (2023) (citing *Morissette v. United States*, 342 U.S. 246, 263 (1952)); *see also McLean v. United States*, 566 F.3d 391, 396 (4th Cir. 2009). We therefore look to what Rule 13(a) requires for compulsory counterclaims. *See, e.g.*, *ABS Glob., Inc. v. Inguran, LLC*, 914 F.3d 1054, 1064 (7th Cir. 2019); *In re Rearden LLC*, 841 F.3d 1327, 1332 (Fed. Cir. 2016).

Rule 13(a) defines a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." That definition alone makes clear OPTO's counterclaim is compulsory. In this case, the "opposing party's claim" is Honeywell's breach-of-contract claim for OPTO's failure to pay royalties. The subject matter of that breach-of-contract claim is the 2020 licensing agreement. The very same 2020 licensing agreement forms the basis of OPTO's patent-misuse counterclaim, which asserts that the agreement constitutes an "unreasonable restraint on competition by *unlawfully extending the reach* of the licensed patents." OPTO's Answers/Counterclaims at 30 (emphasis added). Thus, to resolve OPTO's patent-misuse counterclaim, we would need to compare the scope of the licensing agreement to the scope of Honeywell's underlying patents because "patent misuse covers only activity falling outside of the patent grant." *Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1341 (Fed. Cir. 2006). Half the subject matter of that comparison, of course, is the licensing agreement. So both claim and counterclaim straightforwardly arise out of the same transaction or occurrence—the 2020 licensing agreement—making OPTO's counterclaim

compulsory.[2]  We turn now to the second requirement needed for exclusive Federal Circuit appellate jurisdiction—that the counterclaim is one "arising under" the federal patent laws.

### C.    OPTO's Patent-Misuse Counterclaim "Arises Under" the Federal Patent Laws.

A claim can arise under the federal patent laws by one of two avenues.  Either (1) federal patent law "creates the cause of action asserted," or (2) the claim involves a patent issue that is "necessarily raised," "actually disputed," "substantial," and "capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn v. Minton*, 568 U.S. 251, 257–58 (2013).  The two avenues are each independently sufficient for "arising under" jurisdiction.  *Id.*  We do not consider the second avenue because we determine that OPTO's counterclaim arises under the federal patent laws by the first:  The patent-infringement statute, 35 U.S.C. § 271, created the cause of action for OPTO's counterclaim seeking a declaration of patent unenforceability due to patent misuse.

Key to our conclusion is the fact that OPTO's counterclaim is a declaratory judgment action, which alters how we determine its cause of action.  OPTO is arguing that Honeywell committed patent misuse.  *See Morton Salt Co. v. G.S. Suppiger Co.*, 314 U.S. 488, 493 (1942), *abrogated on other grounds by Ill. Tool Works Inc. v. Indep. Ink, Inc.*,

---

[2] We sometimes consider four inquiries to guide our Rule 13(a) analysis.  *See Painter v. Harvey*, 863 F.2d 329, 331 (4th Cir. 1988) (asking whether the issues of fact and law in the claim and counterclaim are essentially the same; whether *res judicata* would bar a subsequent suit on the counterclaim absent the compulsory counterclaim rule; whether the same evidence would support or refute the claim and the counterclaim; and whether there is a logical relationship between the claim and the counterclaim.).  We need not do so here where the shared subject matter giving rise to the parties' claims is evident.

547 U.S. 28, 42–43 (2006). Ordinarily patent misuse cannot be brought as a claim, as it "is simply an affirmative defense." *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1427 (Fed. Cir. 1997). In other words, OPTO ordinarily would have to wait for Honeywell to attack first with a lawsuit before defending itself by raising patent misuse as a shield. But the Declaratory Judgment Act allows defenses—including patent misuse, *see id.* at 1428—to be preemptively asserted in a request for the court to "declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a); *see Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952). That's precisely what OPTO did here.

The question now is what law created the cause of action in OPTO's counterclaim. Somewhat unintuitively, the answer is not the Declaratory Judgment Act. *See Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197–98 (2014). That is because the Declaratory Judgment Act merely "enlarges the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950). Were the Act itself to provide a cause of action, it would extend federal court jurisdiction to most any case where a plaintiff sought a declaration—including cases involving issues previously barred at the courthouse doors. The Supreme Court tells us that cannot be so. *Id.*

Nor can the cause of action be OPTO's asserted defense of patent misuse. That would directly contravene the longstanding "*Mottley* rule" discussed above, which continues to apply in declaratory judgment actions. *See id.* at 673–74. Under *Mottley* it must be the attack, not the defense, that determines jurisdiction. Were the Act to permit

defenses to establish federal-question jurisdiction, it would also extend the jurisdiction of the federal courts. That, again, cannot be so.

Instead, "[w]here the complaint in an action for declaratory judgment seeks in essence to assert a defense . . . it is *the character of the threatened action*, and not of the defense," that determines jurisdiction. *Pub. Serv. Comm'n*, 344 U.S. at 248 (emphasis added). That is, the relevant cause of action for determining whether OPTO's counterclaim "arises under" the patent laws is the "hypothetical threatened action" that could have been brought by "the declaratory judgment defendant"—here, Honeywell. *Medtronic*, 571 U.S. at 197–98. So we ask: Hypothetically, what action could Honeywell bring that would cause OPTO to raise its patent-misuse defense? The most natural answer is: A suit for patent infringement under 35 U.S.C. § 271.

Arriving at this answer requires an understanding of how the Declaratory Judgment Act intersects with the patent-misuse defense. Patent misuse is a defense "born from the equitable doctrine of unclean hands" that prevents a patent holder from recovering from another when the patent holder has "impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect."[3] *B. Braun Med.*, 124 F.3d at 1426 (quoting *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 100–102 (Fed. Cir. 1986)); *see Dawson Chem. Co. v. Rohm and Haas Co.*, 448 U.S. 176, 180, 186 (1980). As with many equitable defenses, patent misuse can flexibly be raised against more than one type of action. *See Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010)

---

[3] The focus on "anticompetitive effect" is due patent misuse's historically close relationship with antitrust doctrine. *See Ill. Tool Works Inc.*, 547 U.S. at 33–40.

("the patentee loses its right to sue for infringement *or* breach of contract" (emphasis added)).  This flexibility adds an extra step in the declaratory judgment analysis when patent misuse is preemptively asserted.  When a defense can be raised only against a single type of action, the label of the defense alone can be enough to determine the sole possible hypothetical threatened action.  *Cf. Medtronic*, 571 U.S. at 196–97.  But when the label of the defense is not itself dispositive of the set of hypothetical threatened actions—as it is not with patent misuse—we must look elsewhere.[4]

Beyond the label of the defense, the relief sought under the defense is a sensible place to look.  What relief the defense is being asserted *for* helps determine what hypothetical actions the defense could be asserted *against*.  And here, OPTO's requested relief makes the declaratory judgment analysis straightforward.  OPTO has asserted its patent-misuse defense to request "a declaration that [Honeywell's] *licensed patents* under

---

[4] A myopic label-only approach is most clearly nonsensical when considering a defense that could be mounted against an inordinately wide range of lawsuits, such as the equitable doctrine of laches that bars untimely claims.  *See Romag Fasteners, Inc. v. Fossil, Inc.*, 590 U.S. 212, 216–17 (2020) (giving "laches" as an example of a "transsubstantive" equitable principle that "appl[ies] more systematically across claims and practice areas").  Alone, the fact a declaratory judgment plaintiff asserted laches as a defense would give a court little foothold to discern the declaratory judgment defendant's hypothetical threatened action.  *See, e.g.*, *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 294 (4th Cir. 2021) (applying laches to claims made under § 43(a) of the Lanham Act); *White v. Daniel*, 909 F.2d 99, 100 (4th Cir. 1990) (applying laches to claims made under Section 2 of the Voting Rights Act of 1965); *Giddens v. Isbrandtsen Co.*, 355 F.2d 125, 126–27 (4th Cir. 1966) (applying laches to maritime claims under admiralty law in the absence of any applicable statute).  Somewhat ironically, one of the few areas where laches is inapplicable is patent law, as the Supreme Court recently determined that Congress supplanted the doctrine of laches for patent-infringement suits by prescribing statutes of limitations.  *See SCA Hygiene Prods. AB v. First Quality Baby Prods. LLC*, 580 U.S. 328, 331 (2017).

the Agreement are *unenforceable* due to patent misuse." OPTO's Answers/Counterclaims at 32 (emphasis added). As the name suggests, *patent unenforceability* is relief from the enforcement of a *patent*. And the enforcement of a patent against a noncomplying party comes in the form of a patent-infringement suit. *See, e.g.*, *Princo*, 616 F.3d at 1321. So the most natural hypothetical threatened action that could have been brought by Honeywell, against which a patent-misuse defense seeking the relief of patent unenforceability would be raised, is a patent-infringement suit.[5] This is an altogether unremarkable conclusion; patent infringement is the paradigmatic action against which patent misuse is raised. *See id.*

All that is left is to understand what law creates the cause of action in a patent-infringement suit. This question is easier to answer than the last: A patent-infringement suit is brought pursuant to 35 U.S.C. § 271, the patent-infringement statute. Undoubtedly, then, "patent law creates the cause of action" for a patent-infringement suit. *Medtronic*, 571 U.S. at 197–98 (quoting *Christianson*, 486 U.S. at 809). Thus, since jurisdiction over OPTO's declaratory counterclaim looks to this hypothetical patent-infringement suit, the counterclaim is a "civil action arising under . . . any Act of Congress relating to patents."

---

[5] While OPTO's request for the relief of patent unenforceability is *sufficient* for us to easily determine that the relevant hypothetical threatened action is patent infringement in this case, it may not be *necessary*. Depending on how the universe of hypothetical threatened actions is defined and what information the analysis can take into account, it is possible that patent infringement could be a hypothetical threatened action even without an explicit request for patent unenforceability. We leave for another day the question of how to determine the hypothetical threatened action when the relief sought is not so clear.

28 U.S.C. § 1295(a)(1). That gives the Federal Circuit exclusive appellate jurisdiction over this appeal.

### D.     OPTO's Counterarguments Are Unavailing.

OPTO resists this conclusion with three counterarguments. All are unpersuasive.

#### a.  The overall nature of the dispute is irrelevant.

First, OPTO stresses that the dispute before us is fundamentally about breach of contract. We readily concede that this is true. As OPTO notes, the claim brought by Honeywell is for breach of contract, and the interpretation of the licensing agreement is central to all claims and counterclaims. But we fail to see why this matters. Neither the cause-of-action avenue of jurisdiction in § 1295(a)(1) nor the Declaratory Judgment Act operate any differently when the case is more fairly described as a contract dispute.

As laid out above, the Federal Circuit's exclusive jurisdiction under § 1295(a)(1) extends over any appeal when federal patent law creates the cause of action for *any* claim or counterclaim asserted in the case. *See Gunn*, 568 U.S. at 257; Leahy-Smith America Invents Act § 19. This cause-of-action basis for jurisdiction does not depend on the overall nature of the dispute in the case.[6] "The existence of a single claim created by federal patent law is sufficient to trigger the Federal Circuit's exclusive appellate jurisdiction over the entire case." *VersaTop Support Sys., LLC v. Georgia Expo, Inc.*, 921 F.3d 1364, 1368 (Fed. Cir. 2019) (quoting *Amity Rubberized Pen v. Market Quest Grp. Inc.*, 793 F.3d 991,

---

[6] The second avenue for Federal Circuit jurisdiction—when the case presents a substantial issue of patent law—could vary depending on the nature of the dispute. *See Gunn*, 568 U.S. at 258 (requiring the patent issue to be "actually disputed" and not merely touched on in passing).

995 (9th Cir. 2015)).   Indeed, the fact that "non-patent issues will predominate" is "immaterial." *Id.*

This insensitivity to the overall nature of the dispute can be seen in the statutory text.   Congress chose to vest exclusive jurisdiction in the Federal Circuit over the entire "*appeal* from a final decision of a district court" whenever "a party has asserted *a* compulsory counterclaim arising under" the federal patent laws.   § 1295(a)(1) (emphases added).   A case can, and often does, involve many claims and counterclaims.   By tying jurisdiction over the entire appeal to the existence of a single patent claim or counterclaim, Congress rendered the existence of additional non-patent claims irrelevant, even when they form the heart of the case.   *Cf. United States v. Hohri*, 482 U.S. 64, 75–76 (1987) (holding that the adjacent provision of § 1295(a)(2) gives exclusive jurisdiction to the Federal Circuit in "mixed case[s] presenting" both Little Tucker Act and Federal Tort Claims Act claims).

Nor does the nature of the dispute matter when determining the character of the hypothetical threatened action under the Declaratory Judgment Act.   In fact, that theory is essentially what the Supreme Court rejected in *Medtronic*.   571 U.S. at 197–98.   In *Medtronic,* two medical device companies, Medtronic and Mirowski, entered into a licensing agreement allowing Medtronic to use Mirowski's patents in return for royalty payments.   *Id.* at 194.[7]   Medtronic, the licensee, later sought to sell new medical devices

---

[7] *Medtronic* involved a plaintiff's claims, not a defendant's counterclaims, and was applying the old version of § 1295(a)(1) that existed before the "*Holmes Group* fix" in the Leahy-Smith America Invents Act of 2011.   This difference does not matter, however. (Continued)

that it believed were not covered by Mirowski's patents.  *Id.* at 195.  To avoid paying royalties under the licensing agreement, Medtronic brought a declaratory judgment action alleging that its new devices did not infringe Mirowski's patents and therefore fell outside the licensing agreement.  *Id.*

An *amicus* asserted that the Federal Circuit below lacked jurisdiction over the case because, fundamentally, the nature of the dispute between Medtronic and Mirowski was over the amount of contractually required royalties, while the infringement issue was merely ancillary.  *Id.* at 196–97.  Thus, the *amicus* argued, Medtronic's claim seeking a declaration of noninfringement should have been understood as a defense against a hypothetical breach-of-contract claim from Mirowski for failure to pay royalties because "an infringement suit would be unlikely."  *Id.* at 197.  That would have deprived the Federal Circuit of jurisdiction under § 1295(a)(1).

The Supreme Court disagreed, holding instead that the analysis of jurisdiction for declaratory judgment actions is indifferent to the likelihood of the hypothetical threatened action.  *Id.* at 197.  Indeed, even if the prospect of Medtronic *actually* facing an infringement suit were "remote, if not nonexistent," it wouldn't matter.  *Id.* at 197–98 (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128 (2007)).  Under the contract, it was *possible* for Mirowski to "terminate the license and bring an ordinary federal patent law action for infringement," and possibility was all that was needed.  *Id.* at 197; *see also MedImmune*, 549 U.S. at 128–29 ("[W]e do not require a plaintiff to expose

---

*Medtronic*'s reasoning regarding declaratory judgment actions applies equally to counterclaims as well as claims after the Leahy-Smith America Invents Act.

himself to liability before bringing suit.").[8]  That the dispute centered around the licensing

agreement did not change this fact—and, accordingly, did not change whether Medtronic's

declaratory judgment action arose under the federal patent laws.

Like the dispute in *Medtronic*, this dispute between Honeywell and OPTO could

fairly be characterized as a dispute over royalties owed under a licensing agreement.  But,

just as in *Medtronic*, the licensing agreement between Honeywell and OPTO allows

Honeywell to unilaterally terminate the licensing agreement if OPTO fails to pay royalties.

J.A. 77 ("This Agreement may not be terminated except . . . by [Honeywell] in the event

[OPTO] fails to pay undisputed amounts due and owing under this Agreement.").  Upon

the agreement's termination, Honeywell could file suit for patent infringement—just as it

did in 2019 before the existence of the licensing agreement.[9]  And in response, OPTO could

---

[8] This does not mean that the Declaratory Judgment Act permits litigants to seek relief for speculative conflicts.  The statute requires that there already be "a case of actual controversy within [the court's] jurisdiction" before declaratory relief can be sought, tracking Article III's case-or-controversy requirement.  28 U.S.C. § 2201(a); U.S. Const., art. III, § 2.  To bring a declaratory judgment action, a party must still be embroiled in a dispute that is "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief . . . as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'"  *MedImmune, Inc.*, 549 U.S. at 127 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41 (1937)).  The point is only that *within* an existing definite, concrete, and substantial dispute, a party can seek declaratory relief from hypothetical threatened actions that are possible but, for various practical reasons, unlikely to occur.

[9] Though it is irrelevant for our jurisdictional analysis, we note in passing that Honeywell's history of patent-infringement litigation against OPTO makes it quite sensible for OPTO to have preemptively sought relief against infringement suits.  The parties entered into the licensing agreement precisely to avoid litigation over patent infringement.  So if Honeywell were to terminate the licensing agreement, it would be natural for Honeywell to recommence its prior patent-infringement litigation.  Such litigation is all the
(Continued)

defend itself by arguing that Honeywell's misuse under the contract renders its patents unenforceable. *See Morton Salt Co.*, 314 U.S. at 493. So the only thing that matters here is that OPTO asked for a declaration of *patent unenforceability* due to patent misuse. And—once again, like in *Medtronic*—such a declaration would be relief from a threatened suit for patent infringement, not a suit for breach of contract. That is sufficient for Federal Circuit jurisdiction.

OPTO attempts to distinguish *Medtronic* by arguing that it would be unable to raise patent misuse as a defense after Honeywell's termination of the contract. As OPTO tells it, the alleged misuse is the agreement itself, so the defense can be asserted only while the agreement still exists. But patent misuse is not so ephemeral. Even after Honeywell terminates the licensing agreement, OPTO would be able to raise a patent-misuse defense to seek patent unenforceability because such unenforceability can last until "it is made to appear that the improper [licensing agreement] has been abandoned *and* that the *consequences of the misuse* of the patent have been dissipated." *Morton Salt Co.*, 314 U.S. at 493 (emphasis added). The consequences of Honeywell's misuse through its allegedly improper licensing agreement might linger beyond the agreement's termination if, for example, the misuse resulted in improper market concentration that would take time to unwind. *See id.* Far from a fanciful hypothetical, OPTO has, in fact, suggested exactly that in its complaint, which speaks of Honeywell's misuse "limiting OPTO's ability to compete in an alternative market" and "raising the price for consumers generally in that

more likely given that OPTO conceded below that some of Honeywell's numerous patents may cover aspects of its products.

19

market." OPTO's Answers/Counterclaims at 30. So if Honeywell terminated the contract and sued OPTO for patent infringement, OPTO could still then raise precisely what it raised in its declaratory judgment counterclaim here: a defense of patent misuse seeking the relief of patent unenforceability.

There is thus no meaningful distinction between OPTO's declaratory patent-misuse claim and Medtronic's declaratory patent-noninfringement claim for jurisdictional purposes. Both defend against a hypothetical patent infringement suit that, however unlikely to occur, is still possible. As the Supreme Court found Federal Circuit jurisdiction in *Medtronic*, we so find Federal Circuit jurisdiction here.

### b. OPTO cannot disclaim the relief it requested in its complaint.

Second, OPTO argues that we cannot consider its request for patent unenforceability in our jurisdictional analysis. Its theory is that it disclaimed such relief in various briefs and statements before the district court and now only raises a patent-misuse defense to seek a declaration of *contract* unenforceability. But OPTO's briefs and statements cannot alter the relief it requested in its counterclaim complaint. Instead, "the determination of jurisdiction is based only on the allegations in" the "well-pleaded complaint." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025). Of course, OPTO could always have formally amended its complaint. If it did, jurisdiction would have depended on its amended, not original, complaint. *Id.* at 30. But it failed to do so. And courts have never permitted jurisdiction to be altered through subsequent briefing and statements; the

document that controls is always the complaint.[10]  *Id.* at 35 ("[A]s the usual procedural principle holds—jurisdiction follows from (and only from) the operative pleading."). Because OPTO's complaint still contains a request for patent unenforceability, our jurisdictional analysis does too.

To be sure, OPTO *also* requested the relief of contract unenforceability in its counterclaim complaint.  This was sensible; a successful patent-misuse defense can *also* result in the relief of contract unenforceability when the misuse stems from a contract.  *See Princo Corp.*, 616 F.3d at 1328.  But that just means that under the Declaratory Judgment Act, there are multiple hypothetical threatened actions and thus multiple causes of action in OPTO's complaint—something that commonly occurs whenever a party alleges violations of more than one law.  OPTO's request for contract unenforceability in no way erases its separate request for patent unenforceability.  And federal patent law creates the cause of action for that separate request.  So OPTO has still "asserted a compulsory counterclaim arising under" "patent[]" law.  § 1295(a); *see also VersaTop Support Sys.*,

_____

[10]  Contrary to OPTO's assertion, our decision in *Old Dominion Electric Cooperative v. PJM Interconnection, LLC*, 24 F.4th 271 (4th Cir. 2022), counsels no differently.  *Old Dominion* only reiterates that when considering the propriety of federal removal, specifically, courts have always been able to take notice of jurisdictional facts in "other pleadings or the notice of removal" alongside the complaint.  *Id.* at 284 n.9 (quoting 14C Charles A. Wright & Arthur R. Miller, Federal Prac. & Proc. Juris. § 3734 (rev. 4th ed. 2021)).  That conclusion is compelled by the removal statute itself, which requires the defendant to submit "a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  Such a requirement would be pointless if courts could not consult the statement—which lies outside the complaint—when determining removal jurisdiction.  *See* Wright & Miller, Federal Prac. & Proc. Juris. § 3734.  But nothing in the above reasoning, which relies heavily on the text of the removal statute, allows a complainant to freely modify the legal substance of their complaint via later non-amendment filings or otherwise displaces the supremacy of the complaint in the ordinary jurisdictional analysis.

921 F.3d at 1368 (existence of other non-patent claims "immaterial" to Federal Circuit jurisdiction).

### c. Nothing in this decision creates a circuit split.

Third, OPTO warns us that sending this appeal to the Federal Circuit would create a circuit split with the Third Circuit's recent decision in *Ares Trading S.A. v. Dyax Corp.*, which also involved a declaratory judgment claim asserting patent misuse in a licensing-agreement dispute. 114 F.4th 123 (3d Cir. 2024). But the sole declaratory patent-misuse claim in *Ares Trading* was a specific subspecies of the patent-misuse defense under the Supreme Court's decision in *Brulotte v. Thys Co.*, 379 U.S. 29 (1964). And *Brulotte* patent misuse cannot serve as a defense against patent infringement. The Third Circuit therefore had no occasion to address the jurisdictional issue before us today that arises because of OPTO's separate request for patent unenforceability. There can be no circuit split.

In *Brulotte*, the Supreme Court dealt with an attempt to extend the effective life of a patent by contract. The Court determined that the "exaction of royalties" through a licensing agreement "after the patent is expired" constitutes an illicit "assertion of monopoly power." *Id.* at 33.[11] The Court held that any "attempt to project [a patent] into

---

[11] Some background on patents might be helpful to understand the nature of *Brulotte* claims. *See generally* Jonathan S. Masur & Lisa Larrimore Ouellette, *Patent Law: Cases, Problems, and Materials* (3d. ed. 2023). A patent is a government-granted monopoly over new technology. This promised monopoly incentivizes individuals to engage in the costly and uncertain process of invention and creation. But because monopolizing is ordinarily illegal for its detrimental effects consumers, the boundaries of the patent monopoly are constrained to reflect Congress's considered balance between its benefits and its harms. One such constraint is temporal: The patent only lasts for a finite period of time—generally, 20 years, *see* 35 U.S.C. § 154(a)(2)—and a party may only exclude competitors (Continued)

another term by continuation of [a] licensing agreement" through a post-expiration royalty provision "is unenforceable." *Id.* at 34. Patent misuse under *Brulotte* thus refers to the illicit extension of a patent's *temporal* longevity beyond its expiration, rather than the illicit extension of a patent's *physical* scope to "restrain competition in an unpatented product." *B. Braun Med.*, 124 F.3d at 1426; *see also Ares Trading*, 114 F.4th at 145 ("*Brulotte* does not apply to patent misuse involving the enlargement of a patent's scope."). So by definition, *Brulotte* is relevant only *after* a patent has expired. And since a patent cannot be infringed after its expiration, *see* 35 U.S.C. § 271(a) (limiting infringement to those actions taken "during the term of the patent"), the only possible suit that a former patent holder could threaten against a former-licensee for post-expiration use of a patent would be for breach of contract. *See Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 453 (2015) ("The *Brulotte* rule, like others making contract provisions unenforceable . . .").

Consistent with this contract-only understanding of *Brulotte*, the declaratory-judgment plaintiff in *Ares Trading* relied on *Brulotte* to seek only the unenforceability of the royalty provision in its licensing agreement. *See Ares Trading*, 114 F.4th at 131 ("Ares asked for a declaratory judgment that its royalty obligation to Dyax is unenforceable under *Brulotte*."). The hypothetical threatened action against which a party would seek *contract*

---

for that period. When the period expires, the patent holder is no longer any more privileged with respect to the technology than anyone else. Attempts to cheat and effectively extend the length of the government-granted monopoly are thus impermissible—including, as the Supreme Court held in *Brulotte*, by contract. *Brulotte*, 379 U.S. at 33 ("A patent empowers the owner to exact royalties [by contract]. . . with the leverage of [his] monopoly. But to use that leverage to project those royalty payments beyond the life of the patent is . . . to enlarge the monopoly").

23

*unenforceability* due to patent misuse is, of course, breach of *contract*.  And since a party cannot bring a patent-infringement suit based on an expired patent, there is no possibility that such a suit would be a hypothetical threatened action under the Declaratory Judgment Act.  Thus, the Third Circuit was correct to conclude that the federal patent laws did not create the cause of action for Ares's declaratory judgment *Brulotte* claim.  *Id.* at 133.

Nothing in *Ares Trading* conflicts with our decision today.  Had OPTO only asserted *Brulotte* patent misuse to seek contract unenforceability, we would similarly have found jurisdiction over this appeal.[12]  But OPTO's counterclaim complaint was not so limited. By also using the patent-misuse defense to seek a declaration of patent unenforceability, OPTO defended against the different hypothetical threatened action of patent infringement, thereby placing jurisdiction with the Federal Circuit.

*                    *                    *

The parties before us first clashed in a pair of patent-infringement suits brought by Honeywell against OPTO.  They were able to reach a truce a year later in the form of a

---

[12] OPTO *also* raised *Brulotte* as part of its theory of patent misuse.  *See* OPTO Op./Resp. Br. at 75–78.  But unlike the declaratory judgment plaintiff in *Ares Trading*, OPTO raised *Brulotte* only as to *some* of the patents in question.  *Id.* at 75 ("Honeywell committed *per se* misuse by trying to control . . . the *expired* '849, '740, and '009 patents.").  As to other non-expired patents, OPTO raised a different theory of patent misuse—that Honeywell attempted to illicitly enlarge the physical scope of a patent.  *See id.* at 78–81 ("Independently, Honeywell committed *per se* patent misuse by conditioning a license to its general-purpose patents on [OPTO's payment of royalties for] an ability over which Honeywell has no patent rights.").  OPTO's requested relief of patent unenforceability would flow from this latter theory.  *See Zenith Radio Corp. v. Hazeltine Rsch., Inc.*, 395 U.S. 100, 135 (1969) ("[C]onditioning the grant of a patent license upon payment of royalties on products which do not use the teaching of the patent does amount to patent misuse.").

24

patent-licensing agreement.  But that truce was short lived.  Moving from one dispute to the next, Honeywell brought another suit against OPTO, this time for breach of the licensing agreement.  Yet, perhaps wary of the possibility of renewed patent-infringement litigation, OPTO not only contested Honeywell's breach of contract suit, but also preemptively asserted its own patent-misuse counterclaim seeking a declaration that would render Honeywell's patents unenforceable.  Because that declaration would defend against a hypothetical patent-infringement suit, OPTO's declaratory counterclaim "arises under" the federal patent laws.  That resolves this case.  Although OPTO's counterclaim is only one of many claims before us, Congress has determined that a single counterclaim arising under the patent laws is enough to place the entire appeal within the exclusive jurisdiction of the Federal Circuit.  We are bound by Congress's determination.  The appeal is

*DISMISSED.*